STATE OF NORTH CAROLINA EX REL. COMMISSIONER OF INSURANCE AND NORTH
    CAROLINA RATE BUREAU, APPELLEES V. DARE COUNTY, TOWN OF NAGS
    HEAD, TOWN OF SOUTHERN SHORES, STARCO REALTY & CONSTRUCTION,
    INC., JOSEPH M. GERAGHTY, WASHINGTON COUNTY, CURRITUCK COUNTY,
    HYDE COUNTY, THE TOWN OF DUCK, THE TOWN OF SOUTHERN SHORES,
    AND THE TOWN OF INDIAN BEACH, APPELLANTS

No. COA09-701

(Filed 20 April 2010)

**Insurance— homeowners—rate increase—failure to include
requisite findings**

Appellants' appeal from an order of the North Carolina Com-
missioner of Insurance approving a statewide overall increase in
homeowners' insurance rates, with changes varying by form and
territory, was dismissed. Under the statutory ratemaking proce-
dure of N.C.G.S. § 58-2-80, the Court of Appeals cannot assume
jurisdiction over any order of the Commissioner that does not
include the requisite findings in a contested hearing.

Appeal by appellants from order entered 18 December 2008 by
the North Carolina Commissioner of Insurance. Heard in the Court of
Appeals 14 January 2010.

*Williams Mullin, by M. Keith Kapp, Kevin Benedict, and
Jennifer A. Morgan, for appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney
General Daniel S. Johnson and Assistant Attorney General
David W. Boone, for appellees North Carolina Department of
Insurance and Commissioner of Insurance.*

*Young Moore and Henderson, P.A., by R. Michael Strickland,
William M. Trott, Marvin M. Spivey, Jr. and Glenn C. Raynor,
for appellee North Carolina Rate Bureau.*

CALABRIA, Judge.

Dare County, the Town of Nags Head, the Town of Southern
Shores, Starco Realty & Construction, Inc., Joseph M. Geraghty,
Washington County, Currituck County, Hyde County, the Town of
Duck, and the Town of Indian Beach (collectively "appellants")
appeal from the 18 December 2008 order of the North Carolina
Commissioner of Insurance ("the Commissioner") approving, *inter*

*alia*, a statewide overall increase in homeowners' insurance rates (with changes varying by form and territory). For the reasons stated below, we dismiss the appeal.

## I. Background

The North Carolina Rate Bureau ("the Bureau") is a statutorily created entity that consists of member insurance companies who offer, *inter alia*, homeowners' insurance in North Carolina. *See* N.C. Gen. Stat. § 58-36-1 *et seq.* All insurers issuing homeowners' insurance policies in North Carolina are required by statute to become members of the Bureau. N.C. Gen. Stat. § 58-36-5(a) (2007). The statutory duties of the Bureau include filing proposed insurance rates, rating plans, and insurance territory classification plans utilized by its member companies for approval by the Commissioner. *See* N.C. Gen. Stat. §§ 58-36-1(3) and 58-36-15.

On 8 December 2008, the Bureau submitted a filing to the North Carolina Department of Insurance ("the Department") and the Commissioner proposing revisions in homeowners' insurance rates throughout North Carolina ("the initial rate filing"). On 10 December 2008, the Department issued a press release regarding the initial rate filing. The press release included the proposed rate changes for the various insurance territories. In addition, the press release stated that the Department would "review the data to determine if the requests are justified" and that the Commissioner would "make a decision fairly quickly." None of the appellants filed motions to intervene regarding the initial rate filing.

After conducting negotiations regarding the initial rate filing, the Department and the Bureau entered into a "Consolidated Settlement Agreement and Consent Order" ("the Consent Order").[1] The Commissioner approved the Consent Order on 18 December 2008. According to the Consent Order, the overall homeowners' insurance rate, statewide, would increase by 3.9%. Rate revisions varied by territory throughout the State and included both decreases and increases, with the largest increase being 29.8% for homeowners in Territory 42 (located on the east coast of North Carolina). The rate revisions were applicable to all policies that became effective on or after 1 May 2009. Appellants are located in insurance territories that received some of the largest rate increases.

---

1. The Bureau also submitted a filing on 11 December 2008, proposing revisions to the definitions of certain insurance territories. This filing was also resolved by the Consent Order.

On 20 January 2009, appellants filed with the Department a "Notice of Appeal and Exceptions" to this Court, challenging the Consent Order.

## II.  Ratemaking Procedure

The General Assembly has established the statutory procedure the Bureau must utilize in order to request a change in homeowners' insurance rates. The Bureau must submit proposed rate changes, which must include all of the items listed in N.C. Gen. Stat. § 58-36-15(h) (2007), to the Commissioner. N.C. Gen. Stat. § 58-36-15(a) (2007). Additionally, the Department has promulgated regulations that further detail and specify the contents of a rate filing, as authorized by N.C. Gen. Stat. § 58-36-15(h)(14). *See* 11 N.C. Admin. Code 10.1105 (2008).

Once the Bureau has completed a rate filing with the required information, it is submitted to the Commissioner for consideration. The rate filing may be approved in one of two ways: (1) the Commissioner may formally approve the filing; or (2) if the Commissioner does not issue a notice of hearing within 50 days of the rate filing, the rate filing is deemed approved by operation of law. N.C. Gen. Stat. §§ 58-36-15 and 58-36-20 (2007). A rate filing "shall become effective on the date specified in the filing, but not earlier than 210 days from the date the filing is received by the Commissioner[.]" N.C. Gen. Stat. § 58-36-15(a) (2007). However, "any filing may become effective on a date earlier than that specified in this subsection upon agreement between the Commissioner and the Bureau." *Id.*

If, after reviewing the rate filing, the Commissioner determines that the rates requested are "excessive, inadequate or unfairly discriminatory," the Commissioner must send written notice to the Bureau fixing a date for hearing not less than 30 days from the date of the mailing of such notice. N.C. Gen. Stat. §§ 58-36-10 and 58-36-20 (2007). If a hearing is ordered, the Bureau and the Department both participate in the hearing as opposing parties, with the Commissioner serving as the hearing officer to adjudicate the dispute. *See* N.C. Gen. Stat. § 58-36-15 (2007).

At the hearing the factors specified in G.S. 58-36-10 shall be considered. If the Commissioner after hearing finds that the filing does not comply with the provisions of this Article, he may issue his order determining wherein and to what extent such filing is deemed to be improper and fixing a date thereafter, within a rea-

sonable time, after which the filing shall no longer be effective. Any order of disapproval under this section must be entered within 210 days after the date the filing is received by the Commissioner.

N.C. Gen. Stat. § 58-36-20 (2007).[2] Pursuant to the North Carolina Administrative Code, "[i]nformal disposition may be made of a contested case or an issue in a contested case by stipulation, agreement, or consent order at any time during the proceedings. Parties may enter into such agreements on their own or may ask for a settlement conference with the hearing officer to promote consensual disposition of the case." 11 N.C. Admin. Code 1.0417 (2008).

The North Carolina Administrative Code also permits (but does not require) the hearing officer to allow, upon a proper showing by an interested party, intervention in a contested case. *See* 11 N.C. Admin. Code 1.0425 (2008).

Whenever any provision of this Chapter requires a person to file rates . . . with the Commissioner or Department for approval, the approval or disapproval of the filing is an agency decision under Chapter 150B of the General Statutes only with respect to the person making the filing or any person that intervenes in the filing.

N.C. Gen. Stat. § 58-2-53 (2007).

## II. Jurisdiction

The parties agree that a direct appeal of any order or decision of the Commissioner to this Court must be made pursuant to N.C. Gen. Stat. § 58-2-80 (2007). Appellants, the Department, and the Commissioner all argue that, in the instant case, appeal pursuant to § 58-2-80 is inappropriate, and therefore, this Court lacks subject matter jurisdiction to hear this appeal. We agree.

"Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy." *Hardy v. Beaufort Cty. Bd. of Educ.*, —— N.C. App. ——, ——, 683 S.E.2d 774, 778 (2009) (citation omitted). "[T]he issue of subject matter jurisdiction may be raised at any time, even on appeal." *Huntley v. Howard Lisk Co.*, 154 N.C. App. 698, 700, 573 S.E.2d 233, 235 (2002).

N.C. Gen. Stat. § 58-2-80 states, in relevant part:

---

2. This statutory procedure was modified in 2009. *See* 2009 N.C. Sess. Laws 472, § 4.

560          IN THE COURT OF APPEALS

STATE ex rel. COMM'R OF INS. v. DARE CNTY.

[203 N.C. App. 556 (2010)]

> Any order or decision of the Commissioner *that the premium rates charged or filed on all or any class of risks are excessive, inadequate, unreasonable, unfairly discriminatory or are otherwise not in the public interest* or that a classification or classification assignment is unwarranted, unreasonable, improper, unfairly discriminatory or not in the public interest may be appealed to the North Carolina Court of Appeals by any party aggrieved thereby.

N.C. Gen. Stat. § 58-2-80 (2007) (emphasis added).

In order to determine if this Court has the authority to hear the instant appeal, we must determine whether the language of the Consent Order places it within the above italicized statutory language. Initially, we note that the Bureau argues that the General Assembly intended that ALL appeals from any rate changes approved by the Commissioner may only be appealed pursuant to N.C. Gen. Stat. § 58-2-80. We disagree.

> The primary goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute. The legislative purpose of a statute is first ascertained by examining the statute's plain language. Where the language of a statute is clear and unambiguous, there is no room for judicial construction[,] and the courts must give [the statute] its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.

*Liberty Mut. Ins. Co. v. Pennington,* 356 N.C. 571, 574-75, 573 S.E.2d 118, 121 (2002) (internal quotations and citations omitted). The plain language of N.C. Gen. Stat. § 58-2-80 limits direct appeals of rate changes to this Court to "[a]ny order or decision of the Commissioner that the premium rates charged or filed on all or any class of risks are excessive, inadequate, unreasonable, unfairly discriminatory or are otherwise not in the public interest[.]" Under the statutory ratemaking procedure, the Commissioner would only issue an order with the requisite findings after presiding over a contested hearing on a rate filing. This Court cannot assume jurisdiction over any order of the Commissioner that does not include those requisite findings without acting contrary to the plain language of N.C. Gen. Stat. § 58-2-80.

The Consent Order negotiated by the Bureau and the Department stated that although the parties agreed to accept the negotiated rates, neither party was "condoning, validating, accepting, or agreeing to the other's theories, methodologies, or calculations[.]" The Consent

Order also stated that it appeared to the Commissioner "that settlement under the circumstances set forth above is fair and reasonable and should be approved[.]" All outstanding issues in the rate filing were settled without any formal determination by the Commissioner that the initial rate filing did not comply with statutory requirements. As a result, the Commissioner never held a contested hearing regarding the initial rate filing. Without a contested hearing, there necessarily could not be an order of the Commissioner finding the rates proposed in the initial rate filing to be excessive, inadequate, unreasonable, unfairly discriminatory or otherwise not in the public interest. Instead, the rates agreed to by the parties in the Consent Order, while different from the rates proposed by the Bureau in the initial rate filing, were specifically found to be fair and reasonable by the Commissioner.

### III. Conclusion

By its plain language, N.C. Gen. Stat. § 58-2-80 does not apply to the Consent Order. Since a direct appeal of the Consent Order to this Court is not authorized by statute, this Court lacks subject matter jurisdiction to hear this appeal. The instant case must be dismissed.

Dismissed.

Judges GEER and STEPHENS concur.