DARE COUNTY, TOWN OF NAGS HEAD, TOWN OF SOUTHERN SHORES, STARCO REALTY & CONSTRUCTION, INC., JOSEPH M. GERAGHTY, WASHINGTON COUNTY, CURRITUCK COUNTY, HYDE COUNTY, THE TOWN OF DUCK, THE TOWN OF SOUTHERN SHORES, CARTERET COUNTY, THE TOWN OF PINE KNOLL SHORES, THE TOWN OF INDIAN BEACH, AND THE TOWN OF KILL DEVIL HILLS, PETITIONERS V. THE NORTH CAROLINA DEPARTMENT OF INSURANCE, COMMISSIONER OF INSURANCE WAYNE GOODWIN AND NORTH CAROLINA RATE BUREAU, RESPONDENTS

AND

DARE COUNTY, WASHINGTON COUNTY, CURRITUCK COUNTY, HYDE COUNTY, CARTERET COUNTY, NEW HANOVER COUNTY, BRUNSWICK COUNTY, CHOWAN COUNTY, PERQUIMANS COUNTY, TYRREL[L] COUNTY, PAMLICO COUNTY, PASQUOTANK COUNTY, TOWN OF NAGS HEAD, TOWN OF DUCK, TOWN OF SOUTHERN SHORES, TOWN OF INDIAN BEACH, TOWN OF PINE KNOLL SHORES, TOWN OF EMERALD ISLE, TOWN OF KILL DEVIL HILLS, TOWN OF KURE BEACH, TOWN OF CEDAR POINT, TOWN OF HERTFORD, STARCO REALTY & CONSTRUCTION, INC., [AND] JOSEPH M. GERAGHTY, PETITIONERS V. THE NORTH CAROLINA DEPARTMENT OF INSURANCE, COMMISSIONER OF INSURANCE WAYNE GOODWIN AND NORTH CAROLINA RATE BUREAU, RESPONDENTS

No. COA09-1171 and 1172

(Filed 2 November 2010)

**1. Administrative— judicial review of consent order—not a final agency decision**

The trial court correctly concluded that it did not have subject matter jurisdiction over petitioners' request for judicial review of a consent order concerning coastal residential insurance rates. The relevant statutory provisions of Chapter 58 of the North Carolina General Statutes and the Administrative Procedure Act are con-

**DARE CNTY. v. N.C. DEP'T OF INS.**

[207 N.C. App. 600 (2010)]

strued in pari materia, so that a request for judicial review pursuant to N.C.G.S. § 58-2-75 may only be taken from an agency decision or final agency decision. The consent order here was not an agency decision with respect to petitioners because they were not "the person making the filing" or "a person intervening in the filing."

Appeal by Petitioners from order entered 29 April 2009 by Judge Ronald L. Stephens in Wake County Superior Court. Heard in the Court of Appeals 15 April 2010.

*Williams Mullen, by M. Keith Kapp, Kevin Benedict, and Jennifer A. Morgan, for petitioner-appellants.*

*Young Moore and Henderson, P.A., by R. Michael Strickland, William M. Trott, Marvin M. Spivey, Jr., and Glenn C. Raynor, for respondent-appellee North Carolina Rate Bureau.*

*Attorney General Roy Cooper, by Daniel S. Johnson, Special Deputy Attorney General, and David W. Boone, Assistant Attorney General, for the respondent-appellees North Carolina Department of Insurance and Commissioner of Insurance.*

ERVIN, Judge.

Petitioners[1] appeal from an order dismissing their petitions ultimately intended to result in judicial review of a consent order entered by the Commissioner of Insurance. After careful consideration of Petitioners' arguments in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

### A. Substantive Facts

### 1. Insurance Ratemaking Procedures

The North Carolina Rate Bureau was created by N.C. Gen. Stat. § 58-36-1 (2009) for the purpose of representing companies that sell insurance, including "insurance against loss to residential real property . . . and any contents thereof[.]" N.C. Gen. Stat. § 58-36-1(1). An insurance

---

1. Petitioners include twelve North Carolina counties, ten North Carolina towns, and two private parties. All Petitioners joined in the petition and appeal in Case No. COA09-1171; the petition and appeal in Case No. COA09-1172 was filed by five counties, seven towns, and the two private parties. Since our holding is equally applicable to any and all Petitioners and to the parties in both cases, we shall simply refer to the persons and entities challenging the trial court's orders as "Petitioners" regardless of whether they are parties to Case No. COA09-1172, Case No. COA09-1172, or both.

company must be a member of the Rate Bureau before it may write insurance in North Carolina. N.C. Gen. Stat. § 58-36-5(a) (2009). The Commissioner is an elected State official, *see* N.C. Gen. Stat. § 58-2-5 (2009), whose "duties as chief officer of the Department of Insurance are broadly described as 'the execution of laws relating to insurance.' " *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 160 N.C. App. 416, 418, 586 S.E.2d 470, 471 (2003), *aff'd*, 358 N.C. 539, 597 S.E.2d 128 (2004) (citing N.C. Gen. Stat. § 58-2-1 (2001)). Similarly, the Department of Insurance is an agency of the State of North Carolina that is responsible, among other things, for "execution of the laws relating to insurance." N.C. Gen. Stat. § 58-2-1 (2009).

In seeking a change in homeowners' insurance rates:

The [Rate] Bureau must submit proposed rate changes . . . to the Commissioner. N.C. Gen. Stat. § 58-36-15(a) (2007). . . . Once the Bureau has completed a rate filing with the required information, it is submitted to the Commissioner for consideration. The rate filing may be approved in one of two ways: (1) the Commissioner may formally approve the filing; or (2) if the Commissioner does not issue a notice of hearing within 50 days of the rate filing, the rate filing is deemed approved by operation of law. N.C. Gen. Stat. §§ 58-36-15 and 58-36-20 (2007). . . .

If . . . the Commissioner determines that the rates requested are "excessive, inadequate or unfairly discriminatory," the Commissioner must . . . fix[] a date for hearing[.] . . . If a hearing is ordered, the Bureau and the Department both participate in the hearing as opposing parties, with the Commissioner serving as the hearing officer to adjudicate the dispute.

*State ex rel. Comm'r of Ins. v. Dare County*, —— N.C. App. ——, 692 S.E.2d 155, 156-57 (2010) (*Dare County I*). During the consideration of an application for increased homeowners' insurance rates, the Rate Bureau and the Department may, subject to the Commissioner's approval, reach a settlement concerning the appropriate level of homeowners' insurance rates:

Pursuant to the North Carolina Administrative Code, "[i]nformal disposition may be made of a contested case or an issue in a contested case by stipulation, agreement, or consent order at any time during the proceedings. Parties may enter into such agreements on their own or may ask for a settlement conference with the hearing officer to promote consensual disposition of the case."

*Id.*, —— N.C. App. at ——, 692 S.E.2d at 157 (citing 11 N.C. Admin. Code 1.0417 (2008)). The consent order at issue in this case resulted from the use of such a settlement process.

## 2. Consent Order

On 8 December 2008, the Rate Bureau filed a request with the Commissioner seeking "revised premium rates for homeowners' insurance subject to the jurisdiction of the Rate Bureau." In its filing, the Rate Bureau requested a statewide average increase in home-owners' insurance rates of 19.5%, with the proposed increases in coastal territories ranging from 32.1% to 69.8%. The Rate Bureau's filing was assigned Docket No. 1434 by the Department. On 11 December 2008, the Rate Bureau submitted a second filing seeking approval for certain alterations in the territories used to establish homeowners' insurance rates. On 18 December 2008, the Commissioner, the Department, and the Rate Bureau executed a "Consolidated Settlement Agreement and Consent Order," in which the parties agreed to and the Commissioner approved changes in existing homeowners' insurance rates and territories.[2] According to the consent order:

> The Rate Bureau and the Department have agreed to settle the 2008 Rate Filing and the 2008 Territory Filing. The proposed settlement would approve the revised territorial definitions and would provide for an overall statewide rate increase of 3.9%, with changes varying by form and territory[.] . . .

> It appearing to the Commissioner that the Rate Bureau and the Department have, after consultation . . . and subject to approval by the Commissioner . . . entered into a settlement of all matters and things in dispute in connection with the 2008 Rate Filing and the 2008 Territory Filing; . . . and it appearing to the Commissioner that settlement under the circumstances set forth above is fair and reasonable and should be approved:

> NOW, THEREFORE, IT IS ORDERED AND AGREED as follows:

---

2. The information in the record suggests that the Rate Bureau and the Department, with the knowledge of the Commissioner, had been in negotiations for some time prior to the 8 and 11 December 2008 filings and that the Rate Bureau and the Department had reached agreement on a negotiated disposition of the filings in question prior to 8 December 2008.

1. The 2008 Rate Filing is approved subject to the modification set forth . . . below.

2. The revised territorial definitions . . . are approved.

3. The approved overall rate level increase is 3.9%. The approved territory rate level changes . . . are set forth on . . . Exhibit A.. . . The resulting approved territory base class premiums . . . are set forth on . . . Exhibit B. Exhibits A and B are incorporated herein by reference.

4. The revised rates are to become effective . . . on or after May 1, 2009.

5. The parties acknowledge that by entering into this Consent Order neither is condoning . . . or agreeing to the other's theories, methodologies or calculations regarding . . . profit, . . . territory risk load, and/or any other theory, methodology or calculation . . . [and that] by entering into this Consent Order neither is bound or limited in . . . any future rate filings . . . subject to the Bureau's jurisdiction by the theories, methodologies or calculations . . . [in] the 2008 Rate Filing.

6. The Bureau acknowledges the Department's position that by entering into this Consent Order the Department is not validating or accepting the computer model used in the 2008 Rate Filing . . . [or] committing to use computer modeling in future rate filings. The parties agree that they will diligently meet and consult with each other to analyze data with respect to areas of the state with chronically high loss costs, will review computer models of North Carolina's vulnerability to hurricanes and other wind losses and will generally analyze the data as to this line of insurance in an effort to resolve their remaining differences, all to the end that rates be set and maintained both statewide and by territory that are neither excessive, inadequate nor unfairly discriminatory, and that the availability of insurance at actuarially appropriate rate levels is enhanced.

The basic effect of the Commissioner's decision to approve the settlement embodied in the consent order was to raise statewide average homeowners' insurance rates by 3.89%, to raise rates for property owners in coastal territories by 6.5% to 29.8%, and to reduce rates for condominium owners and tenants in coastal territories by 2% to 25%. The consent order also divided one of the territories used to establish

rates for homeowners' insurance located in the coastal area into two separate territories.

After the issuance of the consent order, Petitioners initiated three different proceedings for the purpose of obtaining review of the consent order and of the proceedings that led to its adoption, two of which are involved in the present appeal. We will discuss the history of each of those proceedings in turn.

### 3. Petitioners' Direct Appeal

Petitioners noted an appeal from the consent order to this Court on 20 January 2009. The basis for Petitioner's attempt to directly appeal the consent order to this Court hinged on N.C. Gen. Stat. § 58-2-80 (2009), which provides that:

> Any order or decision of the Commissioner that the premium rates charged or filed on all or any class of risks are excessive, inadequate, unreasonable, unfairly discriminatory or are otherwise not in the public interest or that a classification or classification assignment is unwarranted, unreasonable, improper, unfairly discriminatory or not in the public interest may be appealed to the North Carolina Court of Appeals by any party aggrieved thereby. . . .

On 20 April 2010, we filed an opinion holding that Petitioners were not entitled to directly appeal the consent order to this Court pursuant to N.C. Gen. Stat. § 58-2-80, which reasoned that:

> The plain language of N.C. Gen. Stat. § 58-2-80 limits direct appeals of rate changes to this Court to "[a]ny order or decision of the Commissioner that the premium rates charged or filed on all or any class of risks are excessive, inadequate, . . . or are otherwise not in the public interest[.]" . . . [T]he Commissioner would only issue an order with the requisite findings after presiding over a contested hearing on a rate filing. This Court cannot assume jurisdiction over any order of the Commissioner that does not include those requisite findings without acting contrary to the plain language of N.C. Gen. Stat. § 58-2-80.

*Dare County I*, —— N.C. App. at ——, 692 S.E.2d at 158. As a result, since the consent order lacked the findings required to trigger application of N.C. Gen. Stat. § 58-2-80, this Court held that it lacked subject matter jurisdiction over Petitioners' direct appeal from the consent order and dismissed it.

### 4. Petitioners' Request for Relief from the Commissioner

On 16 January 2009, Petitioners Dare County, Town of Nags Head, Starco Realty & Construction, Inc., Joseph M. Geraghty, Washington County, Currituck County, Hyde County, the Town of Duck, the Town of Southern Shores, and the Town of Indian Beach filed a motion to "intervene in the proceedings resulting in the 18 December 2008 [consent order]." Petitioners asserted that they were "entitled to intervention as [a matter] of right pursuant to [N.C. Gen. Stat. § 1A-1,] Rule 24(a)(2)," and that they were " 'persons aggrieved' within the meaning of [N.C. Gen. Stat. §] 150B-2(6)." In addition, Petitioners requested a hearing "in the event that any party oppose[d] their intervention" and moved that, in the event that Respondents contended that the proceedings were closed, "these proceedings be re-opened[.]" Petitioners also sought a "hearing with the Department [of Insurance]" on "all issues arising in connection with" the consent order, a hearing pursuant to N.C. Gen. Stat. § 1A-1, Rule 60, and reconsideration of the consent order. Petitioners' motion was assigned File No. 09 CvS 7841 in the Wake County Superior Court and Case No. COA09-1171 on appeal before this Court. On 19 March 2009, Petitioners moved for the entry of an order staying the implementation of the consent order.

On 19 March 2009, Petitioners Brunswick County, Carteret County, Chowan County, Kure Beach, New Hanover County, Perquimans County, Tyrrell County, Town of Carolina Beach, Town of Cedar Point, Town of Emerald Isle, Town of Kill Devil Hills, and Town of Pine Knoll Shores moved to intervene in the proceedings before the Commissioner in reliance on the arguments advanced in the motions previously filed by the other Petitioners. The record does not indicate that a hearing was held on the motion filed by the second group of Petitioners; however, the petition for judicial review filed in connection with this proceeding indicates that it was filed by all Petitioners.

The Rate Bureau and the Department moved to dismiss Petitioners' petition on 26 January 2009 and 16 February 2009, respectively. In seeking dismissal of Petitioners' filings, the Rate Bureau and the Department argued that there was no longer an ongoing proceeding in which Petitioners could intervene, that Petitioners were not "aggrieved" parties, and that the filed rate doctrine barred further review by the Commissioner.

DARE CNTY. v. N.C. DEP'T OF INS.

[207 N.C. App. 600 (2010)]

On 7 April 2009, a hearing was conducted before Department of Insurance Hearing Officer William K. Hale. On 16 April 2009, Hearing Officer Hale issued an order[3] denying and dismissing Petitioners' request to intervene, request for a hearing, request for reconsideration, and motion to stay the implementation of the consent order. On 20 April 2009, Petitioners filed a petition seeking judicial review of Hearing Officer Hale's order in the Wake County Superior Court.

## 5. Petitioners' Petitions for Judicial Review in Superior Court

On 20 January 2009, Petitioners[4] filed a petition in the Wake County Superior Court seeking judicial review of the consent order, the entry of a judgment declaring that the Commissioner erred, the issuance of a writ directing the Commissioner to hold a public hearing, and the entry of an order staying implementation of the rates approved by the consent order. This petition was assigned Case No. 09-CVS-1073 in the trial court and Case No. COA09-1172 before this Court.

On 16 February 2009, the Department and the Commissioner filed a motion to dismiss Petitioners' judicial review petitions pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and 12(b)(6) (2009), for lack of subject matter jurisdiction and for failure to state a claim for relief. The Rate Bureau filed a similar dismissal motion on 20 March 2009.

On 20 April 2009, Petitioners filed a petition in Wake County Superior Court[5] seeking judicial review of Hearing Officer Hale's order. On 22 April 2009, the Department, the Commissioner, and the Rate Bureau moved to dismiss this petition for several reasons, including a contention that N.C. Gen. Stat. § 58-2-53 "eliminates Petitioners from the categories of persons who may seek judicial review of rate-making decisions" of the Commissioner.

---

3. According to N.C. Gen. Stat. § 58-2-55, the Commissioner is authorized to "designate a member of his staff to serve as a hearing officer." According to 11 N.C.A.C. § 01.0416, a hearing officer has the authority to hear and rule on motions. As a result, the order entered by Hearing Officer Hale constitutes the Commissioner's final decision concerning Petitioners' motions.

4. This petition was filed by Petitioners Dare County, Washington County, Currituck County, Hyde County, Carteret County, Town of Nags Head, Town of Southern Shores, Town of Duck, Town of Pine Knoll Shores, Town of Indian Beach, Town of Kill Devil Hills, Starco Realty & Construction, Inc., and Joseph M. Geraghty.

5. This petition was filed by all Petitioners.

On 23 April 2009, the trial court conducted a hearing on the dismissal motions and on Petitioners' motion to stay implementation of the consent order. On 29 April 2009, the trial court entered an order dismissing Petitioners' petitions and denying their stay motions on the grounds that the trial court lacked subject matter jurisdiction and that Petitioners lacked standing to seek review of the consent order. The trial court's order stated, in pertinent part, that:

> THE ABOVE-CAPTIONED MATTERS (09 CVS 1073 and 09 CVS 7841) HAVING COME ON FOR HEARING . . . on Motions to Dismiss filed by the North Carolina Rate Bureau . . . and the [Commissioner] . . . through which Motions to Dismiss the Rate Bureau, Department and Commissioner assert the following:

> (1) That Petitioners lack standing to pursue the relief sought through Petitioners' Petition for Judicial Review, Complaint for Declaratory Judgment, Writ, and Motion for Stay of Administrative Decision in File 09 CVS 1073;

> (2) That Petitioners lack standing to pursue the relief sought through Petitioners' Verified Petition for Judicial Review, Motion for Stay, and Request for Declaratory Judgment and Writ in File 09 CVS 7841; and

> (3) That this Court lacks subject matter jurisdiction to consider the Petitioners' claims in Files 09 CVS 1073 and 09 CVS 7841.

> THE PETITIONERS also brought on for hearing . . . their Motions to Stay in Files 09 CVS 1073 and 09 CVS 7841.

> AND THE COURT having fully considered the record and all the pleadings, memoranda, exhibits, and affidavits of the parties, . . . in each File 09 CVS 1073 and 09 CVS 7841, and having further considered the arguments of counsel . . .;

> THE COURT is of the opinion that this Court lacks subject matter jurisdiction to consider the claims asserted by the Petitioners in Files 09 CVS 1073 and 09 CVS 7841, and is of the further opinion that Petitioners[] lack standing to pursue the claims and seek the relief asserted by them in Files 09 CVS 1073 and 09 CVS 7841, and that Respondents' Motions to Dismiss should therefore be allowed.

> WHEREFORE, IT IS HEREBY ORDERED AS FOLLOWED:

**DARE CNTY. v. N.C. DEP'T OF INS.**

[207 N.C. App. 600 (2010)]

1. Respondents' Motions to Dismiss are hereby allowed on the grounds set forth within this Order;

2. Petitioners' Petition for Judicial Review, Complaint for Declaratory Judgment, Writ, and Motion for Stay of Administrative Decision in File 09 CVS 1073 is hereby dismissed for lack of subject matter jurisdiction and lack of standing on the part of Petitioners to pursue the claims and seek the relief asserted in that action;

3. Petitioners' Verified Petition for Judicial Review, Motion for Stay, and Request for Declaratory Judgment and Writ in File 09 CVS 7841 is hereby dismissed for lack of subject matter jurisdiction and lack of standing on the part of Petitioners to pursue the claims and seek the relief asserted in that action.

4. Petitioners' Motions to Stay in Files 09 CVS 1073 and 09 CVS 7841 cannot be considered by this Court due to the Court's lack of subject matter jurisdiction and the Petitioners' lack of standing, and those Motions to Stay are rendered moot by the Court's dismissal through this Order of the Petition and Verified Petition in Files 09 CVS 1073 and 09 CVS 7841, respectively.

Petitioners noted two separate appeals to this Court from the trial court's order, which were assigned Case Nos. COA09-1171 (the appeal from the trial court's order dismissing Petitioners' request for review of Hearing Officer Hale's order) and COA09-1172 (the appeal from the trial court's order dismissing Petitioner's request for review of the consent order). As a result of the fact that these two appeals arose from a common set of facts and involved common issues of law, this Court consolidated the two appeals for purposes of briefing, argument, and decision on 19 November 2009. *See* N.C.R. App. P. 40 (2009) (stating that "[t]wo or more actions that involve common issues of law may be consolidated for hearing . . . upon the initiative of [the appellate] court").

## II. Legal Analysis

### A. Standard of Review

The trial court dismissed Petitioners' review petitions for lack of subject matter jurisdiction.[6] "Subject matter jurisdiction refers to the

---

6. In examining Petitioners' arguments on appeal, we note that they are addressed exclusively to issues relating to the validity of the decisions contained in the consent

power of the court to deal with the kind of action in question" and is "conferred upon the courts by either the North Carolina Constitution or by statute.' " *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987)). " '[T]he standard of review on a motion to dismiss under Rule 12(b)(1) for lack of jurisdiction is *de novo.*' " *State ex rel. Cooper v. Seneca-Cayuga Tobacco Co.*, 197 N.C. App. 176, 181, 676 S.E.2d 579, 583 (2009) (quoting *Hatcher v. Harrah's N.C. Casino Co., LLC*, 169 N.C. App. 151, 155, 610 S.E.2d 210, 212 (2005)). "When reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to [N.C. Gen. Stat. § 1A-1,] Rule 12(b)(1), a trial court may consider and weigh matters outside the pleadings." *Department of Trans. v. Blue*, 147 N.C. App. 596, 603, 556 S.E.2d 609, 617 (2001), *disc. review denied*, 356 N.C. 434, 572 S.E.2d 429 (2002).

## B. Right to Judicial Review

The initial issue that we must address in evaluating Petitioners' challenges to the trial court's order is whether the trial court "had jurisdiction to hear and determine [Petitioners'] petitions for judicial review." According to well-established provisions of North Carolina law:

> There is no inherent or inalienable right of appeal from an inferior court to a superior court or from a superior court to the Supreme Court. *A fortiori*, no appeal lies from an order or decision of an administrative agency of the State . . . unless the right is granted by statute. . . . [T]he appeal must conform to the statute granting the right and regulating the procedure. The statutory requirements are mandatory and not directory. They are conditions precedent to obtaining a review by the courts and must be observed. Noncompliance therewith requires dismissal.

*In re Employment Security Com.*, 234 N.C. 651, 68 S.E.2d 311 (1951) (citing *Cox v. Kinston*, 217 N.C. 391, 8 S.E.2d 252 (1940); *Caudle v. Morris*, 158 N.C. 594, 74 S.E. 98 (1912); *Brown v. Kress & Co.*, 207 N.C. 722, 178 S.E. 248 (1935); *Vivian v. Mitchell*, 144 N.C. 472 (1907); *Lindsey v. Knights of Honor*, 172 N.C. 818, 90 S.E. 1013 (1916) (other

---

order and do not challenge the lawfulness of Hearing Officer Hale's decision denying their request to intervene in and reopen the proceedings before the Commissioner. For that reason, Petitioners did not preserve any issues pertaining to Hearing Officer Hale's order for purposes of appellate review. *See* N.C.R. App. P. 28(a) (2009) (stating that "[i]ssues not presented and discussed in a party's brief are deemed abandoned"). As a result, the only issue before the Court at the present time is the extent to which the trial court properly dismissed Petitioners' request for judicial review of the consent order on the merits.

citations omitted). Although Petitioners' argue that the "legal principles governing administrative agencies . . . require that there be some avenue by which persons aggrieved can challenge an administrative decision," that assumption is simply not consistent with the applicable law. Instead, judicial review of the consent order is only available to Petitioners in the event that the General Assembly has enacted legislation that authorizes Petitioners to seek and obtain such review. Thus, the extent to which the trial court had subject matter jurisdiction over Petitioners' request for judicial review of the consent order depends upon whether the General Assembly has enacted any statutory provisions authorizing Petitioners to seek and obtain judicial review of the consent order.

"Insurance law in this state is governed by chapter 58 of the North Carolina General Statutes." *Gray v. North Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). Several provisions of Chapter 58 address the extent of a person's right to obtain judicial review of an order or decision by the Commissioner. The Administrative Procedure Act includes provisions relating to the issue of judicial review of agency action as well. "[It is] a fundamental canon of statutory construction that statutes which are *in pari materia, i.e.,* which relate or are applicable to the same matter or subject, although enacted at different times must be construed together in order to ascertain legislative intent." *Carver v. Carver,* 310 N.C. 669, 674, 314 S.E.2d 739, 742 (1984) (citing *Media, Inc. v. McDowell County,* 304 N.C. 427, 284 S.E.2d 457 (1981) (other citations omitted)). Since the issue of whether the trial court had subject matter jurisdiction over Petitioners' challenges to the consent order implicates statutes found in both Chapter 58 of the North Carolina General Statutes and the Administrative Procedure Act, we must, therefore, consider the relevant statutory provisions *in pari materia.*

The Administrative Procedure Act sets out "a uniform system of administrative rule making and adjudicatory procedures for agencies." N.C. Gen. Stat. § 150B-1(a) (2009). "In North Carolina, disputes between a state government agency and another person may be formally resolved with the filing of an administrative proceeding referred to as a 'contested case.' " *N.C. Forestry Ass'n v. N.C. Dep't of Env't & Natural Res.,* 357 N.C. 640, 644, 588 S.E.2d 880, 883 (2003). "The contested case provisions of [the Administrative Procedure Act] apply to all agencies and all proceedings not expressly exempted[.]"

N.C. Gen. Stat. § 150B-1(e). The "Department of Insurance is a state agency and as such is subject to the Administrative Procedure Act (APA), [N.C. Gen. Stat.] §§ 150B-1 to -52 (1991)." *In re Appeal by McCrary*, 112 N.C. App. 161, 164, 435 S.E.2d 359, 362 (1993). As a result, "[w]hen faced with an appeal from a decision of an administrative agency [subject to the Administrative Procedure Act], courts should first turn to the" relevant provisions of that legislation. *In re Kapoor*, 303 N.C. 102, 104-05, 277 S.E.2d 403, 406 (1981) (citing N.C. Gen. Stat. § 150A-43 (1978) [replaced by N.C. Gen. Stat. § 150B-43]).

The principal statutory provision concerning the extent of the right of a person to obtain judicial review of an administrative decision contained in the Administrative Procedure Act is N.C. Gen. Stat. § 150B-43 (2009), which provides that:

> Any person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of the decision under this Article, unless adequate procedure for judicial review is provided by another statute[.]

As a result, under N.C. Gen. Stat. § 150B-43:

> a party must satisfy five requirements [in order to seek and obtain judicial review of an adverse administrative action]: '(1) the person must be aggrieved; (2) there must be a contested case; (3) there must be a final agency decision; (4) administrative remedies must be exhausted; and (5) no other adequate procedure for judicial review can be provided by another statute.'

Department *of Transp. v. Blue*, 147 N.C. App. at 605, 556 S.E.2d at 618 (quoting *Huang v. N.C. State University*, 107 N.C. App. 710, 713, 421 S.E.2d 812, 814 (1992)). Thus, the "[Administrative Procedure Act] allows judicial review of a final agency decision in a contested case when all relevant administrative remedies have been exhausted and there is no adequate judicial review provided under any other statute." *In re Kapoor*, 303 N.C. at 104-05, 277 S.E.2d at 406. In light of the clear statutory requirement that persons seeking judicial review of an adverse administrative action utilize the relevant provisions of the Administrative Procedure Act "unless adequate procedure for judicial review is provided by another statute," N.C. Gen. Stat. § 150B-43, we must first determine whether the requirements set out in N.C. Gen. Stat. § 150B-43 are adequately addressed in the judi-

**DARE CNTY. v. N.C. DEP'T OF INS.**

[207 N.C. App. 600 (2010)]

cial review provisions contained in Chapter 58 of the North Carolina General Statutes.[7]

Petitioners contend that their right to judicial review stems from N.C. Gen. Stat. § 58-2-75,[8] which provides that:

> Any order or decision made . . . by the Commissioner . . . . except an order or decision that the premium rates charged or filed on all or any class of risks are excessive, inadequate, unreasonable, unfairly discriminatory or are otherwise not in the public interest . . . shall be subject to review in the Superior Court of Wake County on petition by any person aggrieved filed within 30 days from the date of the delivery of a copy of the order or decision made by the Commissioner upon such person. . . .

In essence, Petitioners argue that, since they are "aggrieved" persons and since the Commissioner did not find that the existing homeowners' insurance rates were "excessive, inadequate, unreasonable, unfairly discriminatory or [were] otherwise not in the public interest," they are entitled to obtain review of the consent order in the Wake County Superior Court pursuant to N.C. Gen. Stat. § 58-2-75. We do not, however, believe that Petitioners' analysis addresses all of the issues that must be considered in determining whether they are entitled to judicial review of the consent order pursuant to N.C. Gen. Stat. § 58-2-75.

---

7. Petitioners emphasize the *caveat* set forth in N.C. Gen. Stat. § 150B-43 referring to "adequate provisions for judicial review [being] provide[d] by another statute." In making this argument, Petitioners appear to be contending that any construction of the relevant statutory provisions that does not afford all aggrieved persons with a right to seek and obtain judicial review of the consent order renders those statutory provisions "inadequate" for purposes of N.C. Gen. Stat. § 150B-43. However, given that N.C. Gen. Stat. § 58-2-80 provides that a "party aggrieved" has a right to appeal a rate order entered by the Commissioner to this Court and given that no one appears to contend that the right of review granted by N.C. Gen. Stat. § 58-2-80 is inadequate, we do not believe that allowing all persons aggrieved, regardless of whether they sought and obtained party status before the Commissioner, is necessary for a review procedure to be "adequate."

8. In their brief, Petitioners note that N.C. Gen. Stat. § 58-36-25(a) (2009) provides that "[a]ny order or decision of the Commissioner shall be subject to judicial review as provided in Article 2 of this Chapter." Although Petitioners concede that this statute is found in the portion of Chapter 58 of the General Statutes governing the operation of the Rate Bureau, they nonetheless assert that their own right to review can be located by "[f]ollowing this express statutory cross-reference[.]" However, since N.C. Gen. Stat. § 58-36-25 applies to the Rate Bureau and expressly indicates that it is subject to the provisions of Article 2 of Chapter 58, this particular statutory provision does not add anything to the analysis that must be conducted in order to determine the extent of Petitioners' rights to obtain judicial review of the consent order.

According to N.C. Gen. Stat. § 58-2-53 (2009):

> Whenever any provision of this Chapter requires a person to file rates, forms, classification plans, rating plans, . . . or any other item with the Commissioner or Department for approval, the approval or disapproval of the filing is an agency decision under Chapter 150B of the General Statutes only with respect to the person making the filing or any person that intervenes in the filing.

In other words, N.C. Gen. Stat. § 58-2-53 states that an order providing for the filing of "rates, forms, classification plans, rating plans, . . . or any other item with the Commissioner or Department for approval" is not a final order with respect to any person or entity that did not make the filing under consideration in that proceeding or "intervene[] in the filing." In this case, the record clearly reflects that the Rate Bureau submitted a filing seeking to obtain the Commissioner's approval for altered homeowners' insurance rates and that the consent order entered by the Commissioner expressly provided that "[t]he 2008 Rate Filing is approved subject to the modification set forth . . . below." Thus, the Rate Bureau was the "person making the filing" for purposes of this proceeding, so the consent order was "an agency decision under Chapter 150B" with respect to that entity. The record also reflects that no party, including Petitioners, intervened or attempted to intervene in the proceeding resulting from the Rate Bureau's filing prior to the entry of the consent order. As a result, in light of the plain language of N.C. Gen. Stat. § 58-2-53, the consent order was "an agency decision . . . only with respect to" the Rate Bureau and not with respect to Petitioners.[9]

As we have already noted, the existence of a "final agency decision" is one of the prerequisites for obtaining judicial review of an administrative order. *Huang*, 107 N.C. App. at 713, 421 S.E.2d at 814

---

9. Petitioners argue that the reference in N.C. Gen. Stat. § 58-2-53 to a "person that intervenes in the filing" should be understood to refer to persons that sought leave to intervene, rather than to persons actually granted intervenor status. However, we do not find this construction of N.C. Gen. Stat. § 58-2-53 persuasive for purposes of deciding this case, since it would have the effect of granting the right to seek judicial review to a party that did not seek leave to participate in the proceedings before the Commissioner prior to the entry of the consent order and since we do not believe that the relevant statutory language supports such an interpretation. Although we tend to agree that a person who unsuccessfully sought leave to intervene prior to the entry of the Commissioner's order should be afforded a right to seek judicial review of the decision to deny that party's request for leave to intervene, we need not decide that issue at this time given that no request for leave to intervene was submitted to the Commissioner prior to the entry of the consent order and since Petitioners have not challenged Hearing Officer Hale's decision to deny their intervention petitions before this Court.

(stating that "before a party may ask a court to rule on an adverse administrative determination . . . there must be a final agency decision.") Although N.C. Gen. Stat. § 58-2-75 does not explicitly refer to the necessity for such an "agency decision" in order for an aggrieved party to seek review of a decision by the Commissioner, that fact, standing alone, does not mean that orders entered by the Commissioner are exempt from the "agency decision" requirement. On the contrary, this Court has held that, "[w]hile [N.C. Gen. Stat.] § 58-2-75 (1991) also provides for judicial review of a decision of the Commissioner, this Court has determined [N.C. Gen. Stat.] § 150B-51 of the [Administrative Procedure Act] to be controlling" and has stated that, "[t]o the extent that [N.C. Gen. Stat.] § 58-2-75 adds to and is consistent with [the Administrative Procedure Act], we will proceed by applying the review standards articulated in both statutes." *McCrary*, 112 N.C. App. at 164, 435 S.E.2d at 362 (quoting *N.C. Reinsurance Facility v. Long*, 98 N.C. App. 41, 46, 390 S.E.2d 176, 179 (1990)). Thus, a determination of the extent to which a decision by the Commissioner must be an "agency decision" for purposes of the Administrative Procedure Act in order for that decision to be subject to judicial review requires "applying the review standards articulated in both N.C. Gen. Stat. § 58-2-75 and N.C. Gen. Stat. § 150B-43.[10]

The language of N.C. Gen. Stat. § 58-2-75, which purports to allow review of "[a]ny order or decision" of the Commissioner, would, if construed literally, eliminate any necessity for the order or decision subject to judicial review to constitute an "agency decision" or a "final agency decision." Any such interpretation of N.C. Gen. Stat. § 58-2-75 would contradict the provisions of the Administrative Procedure Act governing judicial review and be inconsistent with the rules requiring exhaustion of administrative remedies as a precondition for obtaining judicial review and precluding review of interlocu-

10. Admittedly, N.C. Gen. Stat. § 150B-51 deals with the standard of review to be applied in connection with the judicial review of administrative action, while N.C. Gen. Stat. § 150B-43 addresses the   availability of judicial review. However, an examination of N.C. Gen. Stat. § 150B-51 also indicates that a final agency decision is a prerequisite for judicial review of an administrative order. In addition, N.C. Gen. Stat. § 150B-51 is only one of a number of statutory provisions dealing with judicial review that address subjects ranging from the right to review, N.C. Gen. Stat. § 150B-43, to the procedures to be utilized during the judicial review process, N.C. Gen. Stat. §§ 150B-45, 46, 47, 48, 49, 50, to the scope of the review to be conducted by the reviewing court. N.C. Gen. Stat. § 150B-51. As a result, we have no hesitation in saying that, under the logic of *McCrary*, we must apply the standards set out in N.C. Gen. Stat. § 150B-51 in addition to those set out in N.C. Gen. Stat. § 58-2-75 in determining whether Petitioners have a right to seek judicial review of the consent order.

tory orders.[11] For that reason, construing N.C. Gen. Stat. § 58-2-75 to allow appeals from orders that did not constitute an "agency decision" or a "final agency decision" would conflict with the requirement that appeals taken from orders entered by the Commissioner be governed by the standards set forth in both N.C. Gen. Stat. § 58-2-75 and the relevant provisions of the Administrative Procedure Act. Thus, we conclude that a request for judicial review pursuant to N.C. Gen. Stat. § 58-2-75 may only be taken from an "agency decision" or a "final agency decision." We further conclude that, because Petitioners were neither the "person making the filing" nor "any person that intervenes in the filing," N.C. Gen. Stat. § 58-2-53 explicitly makes the consent order not an "agency decision" with respect to Petitioners, a fact that precludes them from seeking judicial review of the consent order under either N.C. Gen. Stat. § 150B-43 or N.C. Gen. Stat. § 58-2-75. As a result, the trial court correctly concluded that it did not have subject matter jurisdiction over Petitioners' request for judicial review of the consent order and dismissed Petitioners' petitions.[12]

We have considered and rejected Petitioners' other arguments pertaining to their right to obtain judicial review of the consent order in the Wake County Superior Court. For example, Petitioners argue that an order by Judge William R. Pittman in a case involving the BEACH and FAIR Plans lends "[f]urther support for [their] interpretation" of certain relevant statutes. However, Judge Pittman's order was entered in a different proceeding involving a separate set of statutory provisions, so that it has no direct bearing on this case. In addition, we are not persuaded by Petitioners' argument that the only purpose of N.C. Gen. Stat. § 58-2-53 is to preclude collateral attacks on orders entered by the Commissioner, since nothing in the language of N.C. Gen. Stat. § 58-2-53 limits the application of that statutory pro-

---

11. The necessity for interpreting N.C. Gen. Stat. § 58-2-75 and the relevant provisions of the Administrative Procedure Act consistently is highlighted by the fact that N.C. Gen. Stat. § 58-2-70 explicitly provides that, "[u]nless otherwise specifically provided for, all administrative proceedings conducted pursuant to this Chapter are governed by Chapter 150B of the General Statues" and the fact that, in judicial review proceedings conducted pursuant to N.C. Gen. Stat. § 58-2-75, the reviewing court is required to conduct its review of the Commissioner's order using the scope of review provisions of the Administrative Procedure Act. *McCrary*, 112 N.C. App. at 164, 435 S.E.2d at 362.

12. The result we reach here, which makes judicial review pursuant to N.C. Gen. Stat. § 58-2-75 available to those persons or entities that participated in proceedings before the Commissioner, is consistent with the approach adopted in N.C. Gen. Stat. § 58-2-80, which provides that judicial review of certain rate-related orders is available to a "party aggrieved thereby."

DARE CNTY. v. N.C. DEP'T OF INS.

[207 N.C. App. 600 (2010)]

vision to the collateral attack context. As a result, none of Petitioners' additional arguments in support of their contention that they have a right to judicial review of the consent order are persuasive given the procedural posture of this case.

We understand that the combination of our decision in this case and our decision in *Dare County I* results in a situation in which Petitioners are unable to challenge the lawfulness of the consent order by either direct appeal to this Court or by seeking judicial review in the Superior Court of Wake County. We believe, however, that balancing the appropriateness of allowing expeditious, informal, negotiated dispositions of matters before the Commissioner and requiring that judicial review of administrative orders be limited to entities that actually participated in the proceeding before the Commissioner with providing individuals, businesses, and other entities concerned about the level of insurance rates they are required to pay with a right to obtain judicial review of rate orders with which they are dissatisfied is a matter for the General Assembly and not for the judicial branch. As we read the relevant statutory provisions, Petitioners simply do not, given the fact that they did not participate in the proceedings before the Commissioner during the pendency of the rate filing, have the right to seek judicial review of the consent order in the Wake County Superior Court, so that the trial court correctly dismissed their review petitions for lack of subject matter jurisdiction.

### III. Conclusion

Thus, for the reasons discussed above, we conclude that the trial court correctly determined that Petitioners did not have the right, under the relevant statutory provisions, to seek judicial review of the consent order in the Wake County Superior Court. In light of that determination, we need not determine whether Petitioners were "aggrieved" by the consent order, what impact the filed rate doctrine has on Petitioners' ability to obtain relief from any errors that the Commissioner may have committed, or whether Petitioners' other challenges to the lawfulness of the consent order have merit. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges BRYANT and ELMORE concur.