CHARLES LYNWOOD JOHNSON v. SOUTHERN INDUSTRIAL CONSTRUCTORS, INC.

No. 282PA97

(Filed 6 February 1998)

**Workers Compensation § 85 (NCI4th)— subrogation lien— determination by court—future benefits—not included**

The trial court was without jurisdiction to determine the subrogation amount of a workers' compensation lien pursuant to N.C.G.S. § 97-10.2(j) where plaintiff was a worker injured by a falling crane; he began receiving workers' compensation and filed a tort suit against defendant, a third party, alleging that his injuries had been caused by the negligence of one of defendant's employees; plaintiff received a verdict and judgment of $219,052 plus interest and costs; plaintiff's employer and workers' compensation insurance carrier filed a subrogation lien; the trial court found that the total of all workers' compensation benefits paid plus the present value of future payments was $300,506.46, so that the tort award was insufficient for the subrogation lien and the court would therefore have authority to determine the amount of the lien; and the court then concluded that it was fair and equitable to reduce the lien to $25,000. The issue of assumed future benefits was considered and decided contrary to plaintiff

**JOHNSON v. SOUTHERN INDUSTRIAL CONSTRUCTORS**

[347 N.C. 530 (1998)]

in *Hieb v. Lowery*, 344 N.C: 403. Furthermore, although subsection (f)(1)(c) of the statute refers to benefits "to be paid," it is clear from the provisions of N.C.G.S. § 97-10.2 and the cases which have construed it that it was and is the intent of the legislature that non-negligent employers are to be reimbursed for those amounts they pay to employees who are injured by the negligence of third parties, and that employees are not intended to receive double recoveries. Since the tort judgment obtained from defendant was sufficient to compensate the workers' compensation subrogation claim at the time of the trial court's order, the court lacked jurisdiction to determine the subrogation amount.

Justice FRYE dissenting.

Justice WEBB joins in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 126 N.C. App. 103, 484 S.E.2d 574 (1997), vacating and remanding an order entered on 3 March 1995 by Sumner, J., in Superior Court, Nash County. Heard in the Supreme Court 19 November 1997.

*Taft, Taft & Haigler, P.A., by Thomas F. Taft and R. Alfred Patrick, for plaintiff-appellee.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by George W. Dennis III and John R. Green, Jr., for unnamed party-appellants Siemens Energy & Automation, Inc., and Zurich-American Insurance Company.*

LAKE, Justice.

This is a workers' compensation case presenting the question of whether a superior court may assert its jurisdiction over the jurisdiction of the Industrial Commission, pursuant to the provisions of N.C.G.S. § 97-10.2(j), by adding assumed future workers' compensation benefits to those currently paid by the employer, to establish that an employee's recovery from a third-party tort-feasor was insufficient to compensate the employer's subrogation lien, and thus allow the trial court to determine the amount and distribution of such lien. The Court of Appeals held that the trial court was correct in including assumed future benefits in determining the insufficiency of the third-party judgment to compensate the subrogation lien, and thus the trial court by this methodology had jurisdiction and the authority to set

the amount of the employer's subrogation lien under this statutory provision. We hold that the trial court may not by this means assert its jurisdiction over the jurisdiction of the Industrial Commission, and accordingly, we reverse the Court of Appeals.

On 17 October 1988, the plaintiff, an employee of Siemens Energy & Automation, Inc. (Siemens), suffered a herniated disk in his back when struck by a falling jib crane in the course of his employment. Siemens denied negligence on its part, but admitted the compensability of plaintiff's injury under the North Carolina Workers' Compensation Act, and through its insurance carrier, Zurich-American Insurance Company (Zurich), began providing compensation for plaintiff's medical expenses and temporary total disability benefits, pursuant to Commission approval, in the amount of $256.00 per week.

On 7 August 1991, plaintiff filed suit against third-party tortfeasor, Southern Industrial Constructors, Inc., the defendant, alleging his injuries were proximately caused by the negligence of one of defendant's employees. Plaintiff prevailed at trial, and pursuant to jury verdict, judgment was entered against defendant in the amount of $219,052.20, plus interest and court costs in the amounts of $55,405.12 and $3,538.28, respectively.

On 22 December 1994, plaintiff filed a motion requesting that the trial court determine the amount of the subrogation lien filed by Siemens and Zurich pursuant to N.C.G.S. § 97-10.2(j). On 4 January 1995, Siemens and Zurich requested distribution of the third-party recovery by order of the Industrial Commission pursuant to N.C.G.S. § 97-10.2(f)(1). On 3 March 1995, pursuant to plaintiff's motion, the trial court, following a hearing, entered an order including, in part, the following findings of fact:

> 4. Zurich-American has asserted its statutory lien during the course of the third-party negligence action; the lien includes both medical expenses and indemnity payments. The lien totaled $121,853.83 on January 27, 1995 and increases by the sum of $256.00 each week.
>
> . . . .
>
> 8. The plaintiff has experienced continuous physical pain and mental suffering since the accident.
>
> . . . .

**JOHNSON v. SOUTHERN INDUSTRIAL CONSTRUCTORS**

[347 N.C. 530 (1998)]

10. Since the trial of this case was concluded, the plaintiff has been evaluated by [a psychologist] who has determined the plaintiff is "totally disabled from employment at any exertional level in the national economy and that such employment in the future is not foreseen . . . ."

11. [Plaintiff's] physical and mental condition prevent him from returning to gainful employment. It is anticipated he will continue to receive workers' compensation indemnity benefits for the rest of his life.

12. [Plaintiff] was 47 years of age at the time of trial and his life expectancy is 27.38 years. Workers['] compensation benefits to be paid in the future at the rate of $256.00 per week total $364,482.56. [A forensic economist] has determined the present value of the future payments is $178,908.63 using a 6% discount rate.

13. The total present value of the workers' compensation lien is $300,506.46 which includes the total amount of all payments made for medical expenses and indemnity through January 20, 1995 and the present value of all future indemnity payments.

14. The award of $219,052.20 is exceeded by the total lien of $300,506.46 and is insufficient to compensate the subrogation claim of Zurich-American.

Upon these findings, the trial court concluded that it had authority, pursuant to the provisions of N.C.G.S. § 97-10.2(j), to determine the amount of the workers' compensation lien of Siemens and its insurance carrier, Zurich; that it was fair and equitable to reduce the workers' compensation lien to the total sum of $25,000.00 to be paid to Zurich, with the remaining sum of $252,995.60 from the judgment against the defendant (the third-party tort-feasor) to be made available for payment of court costs, attorney fees and damages to the plaintiff; and the court so ordered. Siemens and Zurich, as unnamed parties in this action, filed notice of appeal to the Court of Appeals, which upheld the jurisdictional determination and premise of the trial court, but vacated and remanded "for further hearing and specific findings of fact." *Johnson v. Southern Indus. Constructors,* 126 N.C. App. 103, 116, 484 S.E.2d 574, 581 (1997). The petition of these parties for discretionary review was allowed by this Court on 23 July 1997.

The plaintiff contends that the provisions of N.C.G.S. § 97-10.2(j) give the trial court the jurisdiction and authority to set the amount of the subrogation lien in this case. Section 97-10.2(j) provides in pertinent part:

> Notwithstanding any other subsection in this section, in the event that a judgment is obtained which is insufficient to compensate the subrogation claim of the Workers' Compensation Insurance Carrier, or in the event that a settlement has been agreed upon by the employee and the third party, either party may apply to . . . the presiding judge before whom the cause of action is pending, to determine the subrogation amount. After notice to the employer and the insurance carrier, after an opportunity to be heard . . . , the judge shall determine, in his discretion, the amount, if any, of the employer's lien.

N.C.G.S. § 97-10.2(j) (1991).

As this Court has stated, it is clear that the two events under this statute "which will trigger the authority of a judge to exercise discretion in determining or allocating the amount of lien or disbursement are (1) a judgment insufficient to compensate the subrogation claim of the workers' compensation insurance carrier or (2) a settlement." *Hieb v. Lowery*, 344 N.C. 403, 409, 474 S.E.2d 323, 326 (1996). Plaintiff argues that the trial court's jurisdiction and discretion to set the amount of the subrogation lien were triggered in this case because plaintiff's assumed *future benefits* should be included with the compensation benefits he has already been paid when ascertaining the amount of the subrogation lien, and thereby, with this composite, the judgment obtained from the third party would be insufficient to satisfy the lien. We decline to accept this proposition.

Indeed, this Court has already considered and decided this issue contrary to this premise in *Hieb*. *Hieb* was a case substantially similar to the circumstances in the case *sub judice*, involving the amount or sufficiency of the third-party judgment to satisfy the subrogation claim. In *Hieb*, it was argued that the plaintiff was "permanently and totally disabled and therefore receiving lifetime benefits," *id.* at 409, 474 S.E.2d at 327, and considering the compensation benefits then paid, "plaintiffs contend it is substantially certain that the workers' compensation lien will exceed the amount of available funds in the future," *id.* This Court specifically held in *Hieb* that plaintiff's "judgment is greater than the amount of St. Paul's lien at the time of Judge Sitton's order and therefore is not 'insufficient to compensate the

subrogation claim.' " *Id.* at 410, 474 S.E.2d at 327. Likewise, in the case *sub judice,* since the judgment obtained from defendant is sufficient to compensate the subrogation claim of Siemens and Zurich *at the time of* the trial court's order, the trial court was without jurisdiction to determine the subrogation amount pursuant to N.C.G.S. § 97-10.2(j).

Plaintiff further contends that subjection (j) of this statute must be read *in pari materia* with N.C.G.S. § 97-10.2(f)(1)(c). *Pollard v. Smith,* 324 N.C. 424, 426, 378 S.E.2d 771, 773 (1989). Subsection (f)(1)(c) provides that the employer shall be reimbursed by order of the Commission from the proceeds of the recovery from the third party for "all benefits by way of compensation or medical compensation expense paid or to be paid by the employer under award of the Industrial Commission." N.C.G.S. § 97-10.2(f)(1)(c). Therefore, plaintiff argues that the trial court should consider and determine the future benefits "to be paid" in determining pursuant to subsection (j) whether a judgment obtained is insufficient. We also decline to adopt this proposed construction of N.C.G.S. § 97-10.2.

It is clear from our decisions that subsection (j) is to be viewed in light of this entire statute, *Pollard v. Smith,* 324 N.C. at 426, 378 S.E.2d at 772, which sets forth the overall procedure for determining the respective rights to compensation and subrogation between the employee, the employer and any third-party tort-feasor, and that this is entirely the province of the Commission except in the limited circumstance set forth in subsection (j). We note specifically that subsection (e) provides at length for the appropriate disbursement of the funds available, by way of reduction of damages, subrogation and contribution, all in avoidance of unjust, excessive or double recovery; and subsection (f) provides a specific order of priority for disbursement of the third-party judgment proceeds *by the Commission* where the employer has admitted liability for benefits "or if an award final in nature" has been entered by the Commission. This includes the reimbursement to the employer in subparagraph (f)(1)(c) for all benefits "paid or to be paid" under the award of the Commission. We further note in this regard that in the case *sub judice,* the plaintiff, pursuant to Commission approval, has been receiving temporary total disability benefits, whereas in *Hieb,* the plaintiff was permanently and totally disabled and was receiving lifetime benefits. The Commission, as intended by the legislature, is far better equipped, by its established procedures, practice and expertise, to make the determinations and dispensations contemplated by subsections (e)

and (f), with respect to the variables of future workers' compensation benefits, than is the already amply burdened superior court system.

The construction advocated by plaintiff would necessarily expand the scope and applicability of subsection (j) and at the same time severely restrict the scope and applicability of subsection (f). It is entirely conceivable that under plaintiff's interpretation of subsection (j), virtually any award by the Commission extending into the future could be so projected as to render any judgment against a third party insufficient to compensate the subrogation claim. Subsection (j) provides in pertinent part, "in the event that a judgment is obtained which *is* insufficient to compensate the subrogation claim" (emphasis added), and this wording clearly indicates that the comparison between the compensation benefits paid and the judgment is to be made at the precise time the "judgment is obtained." Plaintiff's proposed construction would require that this language of the statute be amended to read "in the event that a judgment is obtained which is *or may in time become* insufficient . . . ," and this would constitute an impermissible rewriting of this statute by this Court.

With respect to interpreting the Workers' Compensation Act, this Court has warned against any inclination toward judicial legislation, and in the words of Justice Ervin, speaking for this Court, " '[j]udges must interpret and apply statutes as they are written.' " *Andrews v. Nu-Woods, Inc.*, 299 N.C. 723, 726, 264 S.E.2d 99, 101 (1980) (quoting *Montague Bros. v. W.C. Shepherd Co.*, 231 N.C. 551, 556, 58 S.E.2d 118, 122 (1950)). This Court has long distinguished between liberal construction of statutes and impermissible judicial legislation or the act of a court in " 'ingrafting upon a law something that has been omitted, which [it] believes ought to have been embraced.' " *Deese v. Southeastern Lawn & Tree Expert Co.*, 306 N.C. 275, 278, 293 S.E.2d 140, 143 (1982) (quoting *Rice v. Denny Roll & Panel Co.*, 199 N.C. 154, 157, 154 S.E. 69, 70 (1930)).

In its acquiescence in the plaintiff's proposed interpretation of subsection (j), in conjunction with subsection (f)(1)(c) of this statute, the Court of Appeals notes the following comments from Professor Larson:

> A complication that, in the nature of things, cannot be avoided is the fact that at the time of distribution of the third-party recovery the extent of the carrier's liability for future benefits often is unknown. Indeed, this would happen in almost every

serious case in which the compensation payments are periodic and the third-party recovery is reasonably prompt.

A well-drawn statute will anticipate this problem and spell out the steps to meet it.

2A Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 74.31(e), at 514-15 (1996). The Court of Appeals, while correctly noting this complication with respect to consideration of benefits "to be paid", as provided in subsection (f)(1)(c) for disbursement by order of the Industrial Commission, undertakes to apply this to subsection (j) and thus allow our superior courts to expand their jurisdiction by undertaking, as the trial court did in this case, the type of extensive evidentiary hearing heretofore reserved exclusively for the expertise of the Commission. For the reasons stated herein, we do not perceive this to be the intent of the legislature by its enactment of N.C.G.S. § 97-10.2(j).

The concept and provisions of the Workers' Compensation Act as a whole, and specifically the language of N.C.G.S. § 97-91, make it clear, as this Court has held, that the legislature intended for the Industrial Commission to have broad and exclusive jurisdiction, except in narrow, specific instances, to determine the amounts of compensation "to be paid" to injured workers and the appropriate disposition and remedies with respect to all parties involved, including frequently third parties. *See Morse v. Curtis*, 276 N.C. 371, 172 S.E.2d 495 (1970); *Cox v. Pitt County Transp. Co.*, 259 N.C. 38, 129 S.E.2d 589 (1963). Exceptions to the Commission's jurisdiction, such as that found in N.C.G.S. § 97-10.2(j), should be construed so as to accomplish and be consistent with the overall purposes of the Act, which includes limiting employers' financial liability and preventing double recoveries to employees. *Radzisz v. Harley Davidson of Metrolina, Inc.*, 346 N.C. 84, 484 S.E.2d 566 (1997). In *Radzisz*, this Court recently stated:

> The purpose of the North Carolina Workers' Compensation Act is not only to provide a swift and certain remedy to an injured worker, but also to ensure a limited and determinate liability for employers. *Barnhardt v. Yellow Cab Co.*, 266 N.C. 419, 427, 146 S.E.2d 479, 484 (1966). Section 97-10.2 and its statutory predecessors were designed to secure prompt, reasonable compensation for an employee and simultaneously to permit an employer who has settled with the employee to recover such amount from a third-party tort-feasor. *Brown v. Southern Ry. Co.*, 204 N.C.

668, 671, 169 S.E. 419, 420 (1933). Absent extenuating circumstances not present here, the Act in general and N.C.G.S. § 97-10.2 specifically were never intended to provide the employee with a windfall of a recovery from both the employer and the third-party tort-feasor. Where "[t]here is one injury, [there is] still only one recovery." *Andrews v. Peters*, 55 N.C. App. 124, 131, 284 S.E.2d 748, 752 (1981), *disc. rev. denied*, 305 N.C. 395, 290 S.E.2d 364 (1982).

*Radzisz*, 346 N.C. at 89, 484 S.E.2d at 569.

It is clear from the provisions of N.C.G.S. § 97-10.2, including specifically subsection (j) thereof, and the cases which have construed it, that it was and is the intent of the legislature that nonnegligent employers are to be reimbursed for those amounts they pay to employees who are injured by the negligence of third parties, and that employees are not intended to receive double recoveries. The rulings of the trial court and the Court of the Appeals in the case *sub judice* would effect the opposite. We therefore hold that since the judgment for plaintiff against the third-party tort-feasor in this case, in the amount of $219,052.20, *is* greater than the amount of the lien *at the time of* the trial court's order and is thus not "insufficient to compensate the subrogation claim," the trial court did not have jurisdiction to determine the amount of the lien pursuant to N.C.G.S. § 97-10.2(j).

For the reasons stated herein, we reverse the decision of the Court of Appeals.

REVERSED.

Justice FRYE dissenting.

Simply stated, the issue in this case is whether "the subrogation claim of the Workers' Compensation Insurance Carrier" includes benefits "to be paid by the employer under award of the Industrial Commission" for purposes of determining, pursuant to N.C.G.S. § 97-10.2(j), whether the judgment obtained by the employee against a third-party tort-feasor is "insufficient" to compensate that claim. As I read the majority opinion, which reverses the superior court and the Court of Appeals, it holds that the subrogation claim includes only benefits already paid at the time of the judgment obtained by the employee against the tort-feasor and does not include any amounts

"to be paid" by the employer under an award by the Industrial Commission.

Under N.C.G.S. § 97-10.2(j), if an employee obtains a judgment against a third-party tort-feasor "which is insufficient to compensate the subrogation claim" of the workers' compensation carrier, the presiding superior court judge, upon application of either party, may determine the amount, if any, of the employer's lien. What this means is that, notwithstanding the fact that the subrogation claim exceeds the amount of the judgment, the superior court may, in its discretion, set the lien at an amount that is less than the subrogation claim.

In the instant case, the presiding superior court judge determined, pursuant to his authority under N.C.G.S. § 97-10.2(j), that the judgment obtained by plaintiff was insufficient to compensate the subrogation claim and, in his discretion, reduced the subrogation amount, that is, "determine[d] . . . the amount . . . of the employer's lien." N.C.G.S. § 97-10.2(j) (1991). This comports with the purpose of subsection (j) which is to allow the injured employee to receive a portion of the recovery obtained in his lawsuit against the negligent third party. The Court of Appeals agreed that the superior court proceeded correctly under N.C.G.S. § 97-10.2(j), but remanded the case for further hearing and specific findings of fact. The majority now reverses the Court of Appeals, holding "that the trial court may not by this means assert its jurisdiction over the jurisdiction of the Industrial Commission."

The majority relies on *Hieb v. Lowery*, 344 N.C. 403, 474 S.E.2d 323 (1996), to support the conclusion that plaintiff's future benefits may not be included when ascertaining the amount of the workers' compensation carrier's claim for purposes of triggering N.C.G.S. § 97-10.2(j). Although I dissented in *Hieb*, I am bound by the decision of the Court in that case. However, I do not believe *Hieb* is controlling in the instant case. The relevant issue in *Hieb* was whether the word "judgment" in N.C.G.S. § 97-10.2(j) referred to the amount awarded by the trial court or to the proceeds actually available to satisfy the judgment. This Court settled the question by according judgment its "plain meaning," holding that the jury verdict of over $1.2 million, as modified, constituted the judgment rather than the $475,000 in insurance proceeds that were actually available to satisfy the judgment.

In this case there is no dispute as to the amount of the judgment. Rather, we are called upon to determine what constitutes the work-

ers' compensation carrier's "subrogation claim." The Workers' Compensation Act, chapter 97 of the North Carolina General Statutes, does not define the term "subrogation claim." However, where the employer has filed a written admission of liability for benefits or a final award has been entered by the Industrial Commission, the insurance carrier's right to subrogation, authorized by N.C.G.S. § 97-10.2(g), is determined by the employer's right, under N.C.G.S. § 97-10.2(f)(1)(c), to reimbursement "for all benefits . . . paid or *to be paid* by the employer under award of the Industrial Commission." N.C.G.S. § ·97-10.2(f)(1)(c) (emphasis added). Therefore, to the extent that the workers' compensation insurance carrier will pay benefits in the future, the carrier will have a "subrogation claim" for those payments against any amount obtained by settlement, judgment, or otherwise from a third-party tort-feasor. This claim entitles the insurance carrier to pursue its right to a lien "[i]n any proceeding against or settlement with the third party." N.C.G.S. § 97-10.2(h).

The carrier's right to subrogation does not cease to accrue at the precise moment that the judgment is obtained. Rather, it continues as to all benefits *to be paid* in the future by the employer under award of the Industrial Commission. It is therefore inequitable to deny the existence of that component of the subrogation claim when comparing it with the judgment for purposes of determining the judgment's sufficiency under N.C.G.S. § 97-10.2(j). Because I conclude that the meaning of "subrogation claim" under N.C.G.S. § 97-10.2(j) includes amounts "to be paid" by the workers' compensation carrier as well as those which have already been paid at the time the judgment is obtained, I must agree with the Court of Appeals that the trial court properly considered benefits "to be paid" in determining the insufficiency of the third-party judgment to compensate the subrogation claim. For this reason, I cannot join the majority opinion.

Justice WEBB joins in this dissenting opinion.