McGEE, Chief Judge.
 

 *477
 
 Thomas David Dion ("Plaintiff"), Neuwirth Motors ("Neuwirth"), and Brentwood Services, Inc. ("Brentwood") appeal from an order determining the amount of a workers' compensation subrogation lien on a judgment obtained by Plaintiff against William Robert Batten, Sr. ("Defendant"). We affirm.
 

 I.
 
 Background
 

 Plaintiff was employed by Neuwirth as a servicing agent. In the course and scope of his employment with Neuwirth, Plaintiff was driving on Oriole Drive in Wilmington, North Carolina on 20 March 2008, when the vehicle he was driving was struck by a vehicle driven by Defendant, who had failed to stop at a red light. As a result of the crash, Plaintiff sustained multiple injuries. Because the crash occurred during the course and scope of Plaintiff's employment with Neuwirth, Plaintiff
 
 *478
 
 was entitled to, and filed a claim for, workers' compensation benefits pursuant to Chapter 97 of the North Carolina General Statutes. Plaintiff, Neuwirth, and Neuwirth's workers' compensation servicing agent, Brentwood, agreed that Plaintiff was entitled to $528,665.61 for injuries sustained in the crash. The agreement between Plaintiff, Neuwirth, and Brentwood was approved by the Industrial Commission by order entered 14 November 2012.
 
 [1]
 
 Pursuant to N.C. Gen.Stat. § 97-10.2(f), Neuwirth and Brentwood asserted a lien against any third party recovery.
 

 In addition to the workers' compensation claim, Plaintiff filed the present lawsuit against Defendant on 16 November 2010, asserting a claim of negligence. After the complaint was filed, and as permitted by N.C. Gen.Stat. § 20-279.21(b)(4), a trio of interested insurance companies entered the lawsuit by filing answers as unnamed defendants: Nationwide Mutual Insurance Company ("Nationwide"); Foremost Insurance Company ("Foremost"); and Government Employees Insurance Company ("GEICO"). Defendant maintained a policy with Nationwide that provided liability insurance coverage in the amount of $30,000.00, and underinsured motorist coverage ("UIM coverage") in the amount of $100,000.00. Plaintiff maintained insurance policies with Foremost and GEICO that provided UIM coverage for damages Defendant was entitled to in excess of the limits of Defendant's Nationwide policy.
 

 Sometime after filing an answer to Plaintiff's complaint, Nationwide tendered its policy limits of $100,000.00.
 
 [2]
 
 Disbursement of
 
 *847
 
 the funds was approved by the Industrial Commission by order entered 9 December 2011, and provided that the $100,000.00 would be dispersed in equal shares to: (1) Plaintiff; (2) Plaintiff's counsel, for attorney's fees; and (3) Neuwirth and Brentwood. The order also stated that "[n]othing contained in this Order shall be construed as a waiver of ... defendant/workers' compensation carrier's lien. Plaintiff and defendant/workers' compensation carrier explicitly acknowledge the defendant/workers' compensation carrier's
 
 *479
 
 right to assert a lien against the proceeds of any additional third-party funds paid to [P]laintiff." Plaintiff's insurance policies with Foremost and GEICO each provided that either party had the option to require arbitration. Plaintiff, Foremost, and GEICO decided to exercise that option, and the matter was referred to arbitration. Arbitration began on 8 April 2015 and, on 13 April 2015, the arbitration panel decided Plaintiff was entitled to recover $285,000.00 from Defendant for personal injuries sustained in the 20 March 2008 crash.
 

 The trial court entered the arbitration award as a judgment on 12 May 2015.
 
 R p 36.
 
 In entering the judgment, the trial court determined that the arbitration award "should be reduced by the amount of $100,000.00 which had previously been paid to Plaintiff" by Nationwide. The trial court awarded interest on the full amount, $285,000.00, from 16 November 2010, when the lawsuit was filed, to 9 December 2011, when Nationwide tendered its policy limits. The trial court also awarded interest on the reduced amount, $185,000.00, from 10 December 2011 through 1 May 2015.
 

 Foremost filed a motion on 4 May 2015 to determine the subrogation amount pursuant to N.C.G.S. § 97-10.2(j), and the trial court held a hearing on Foremost's motion three days later. Following the hearing, the trial court entered a written order on 4 June 2015 "determin[ing]" the appropriate amount of Neuwirth's and Brentwood's workers' compensation subrogation lien. The trial court concluded as a matter of law that the
 

 rights to, and the amount of the employers and workers['] compensation carrier's lien under [N.C.G.S. § ] 97-10.2 were created by, and set forth and defined in, and are limited by [N.C.G.S. § ] 97-10.2 and specifically sub-sections (f)(1)c. and (j)[.] ... As that lien is a creature of statute, employers and workers['] compensation carriers necessarily have no right to recover any amount of money by reason of such lien which is greater than, or other than such amount as provided by [N.C.G.S.] § 97-10.2(f)(1) c. and (h).
 

 The trial court further concluded that although Neuwirth and Brentwood paid workers' compensation benefits to Plaintiff totaling $528,665.61, "their workers['] compensation subrogation lien [could not] exceed $285,000.00, that being the total amount of the [j]udgment obtained by [Plaintiff] in this lawsuit in compensation for his injuries." Accordingly, the trial court found the amount of the workers' compensation subrogation lien to be "$190,000.000, which is calculated by subtracting attorney's
 
 *480
 
 fees ($95,000.00), interest ($74,291.50) and court costs ($160.00) from the judgment amount obtained by Plaintiff [ ] by [j]udgment in this lawsuit ($359,451.50)." Plaintiff, Brentwood, and Neuwirth appeal.
 

 II.
 
 Analysis
 

 Plaintiff, Brentwood, and Neuwirth (collectively, "Appellants") present two jurisdictional arguments: (1) Foremost-as a "third party," and not an "employer" or "employee"-lacked standing to apply for a determination of the subrogation amount; and (2) even if Foremost did have standing, the trial court nevertheless acted outside of its subject matter jurisdiction when ruling on Foremost's motion. In the alternative, Appellants contend the trial court: (1) misinterpreted N.C. Gen.Stat. § 97-10.2(j) ; (2) abused its discretion by reducing the amount of the workers' compensation lien from the "statutory amount;" and (3) erred by failing to make findings of fact that adequately evidenced the trial court's consideration of a statutorily required factor.
 

 (A)
 
 Standing
 

 Appellants contest Foremost's standing to apply for a determination of the subrogation amount. Standing "refers to whether a party has a sufficient stake in an
 
 *848
 
 otherwise justiciable controversy that he or she may properly seek adjudication of the matter."
 
 Lee Ray Bergman Real Estate Rentals v. N.C. Fair Housing Ctr.,
 

 153 N.C.App. 176
 
 , 179,
 
 568 S.E.2d 883
 
 , 886 (2002) (citing
 
 Sierra Club v. Morton,
 

 405 U.S. 727
 
 ,
 
 92 S.Ct. 1361
 
 ,
 
 31 L.Ed.2d 636
 
 (1972) ).
 
 [3]
 
 "Standing is a necessary prerequisite to the court's proper exercise of subject matter jurisdiction."
 
 Creek Pointe Homeowner's Ass'n v. Happ,
 

 146 N.C.App. 159
 
 , 164,
 
 552 S.E.2d 220
 
 , 225 (2001),
 
 disc. review denied,
 

 356 N.C. 161
 
 ,
 
 568 S.E.2d 191
 
 (2002). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim."
 
 Coker v. DaimlerChrysler Corp.,
 

 172 N.C.App. 386
 
 , 391,
 
 617 S.E.2d 306
 
 , 310 (2005) (citation omitted). Whether a party has standing is a question of law that this Court reviews
 
 de novo.
 

 Indian Rock Ass'n v. Ball,
 

 167 N.C.App. 648
 
 , 650,
 
 606 S.E.2d 179
 
 , 180 (2004). "Under a
 
 de novo
 
 review, the [C]ourt considers the matter anew and freely substitutes its own judgment for that" of the trial court.
 
 Craig v. New Hanover Cty. Bd. of Educ.,
 

 363 N.C. 334
 
 , 337,
 
 678 S.E.2d 351
 
 , 354 (2009) (citation and internal quotation marks omitted).
 
 *481
 
 In determining whether N.C.G.S. § 97-10.2(j) confers standing upon Foremost to apply for a determination of the subrogation amount, we begin with the text of the statute.
 
 See
 

 Correll v. Division of Social Services,
 

 332 N.C. 141
 
 , 144,
 
 418 S.E.2d 232
 
 , 235 (1992) ("Statutory interpretation properly begins with an examination of the plain words of the statute." (citation omitted)). "When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning."
 
 Lemons v. Old Hickory Council,
 

 322 N.C. 271
 
 , 276,
 
 367 S.E.2d 655
 
 , 658 (1988) (citations omitted);
 
 see also
 

 State v. Wiggins,
 

 272 N.C. 147
 
 , 153,
 
 158 S.E.2d 37
 
 , 42 (1967) ("It is elementary that in the construction of a statute words are to be given their plain and ordinary meaning unless the context, or the history of the statute, requires otherwise." (citation omitted)).
 

 The statute at issue in this case, N.C.G.S. § 97-10.2(j), provides in relevant part:
 

 Notwithstanding any other subsection in this section, in the event that a judgment is obtained by the employee in an action against a third party, or in the event that a settlement has been agreed upon by the employee and the third party,
 
 either party may apply
 
 to the resident superior court judge of the county in which the cause of action arose or where the injured employee resides, or to a presiding judge of either district, to determine the subrogation amount.
 

 N.C. Gen.Stat. § 97-10.2(j) (2015) (emphasis added). Considering the words as they appear in the statute, and giving those words their plain and ordinary meaning, it is clear that N.C.G.S. § 97-10.2(j) permits Foremost to apply for a determination of the subrogation amount. The statute provides that when an "employee"-such as Plaintiff-obtains a judgment against, or arrives at a settlement with, a "third party," then "either party may apply ... to determine the subrogation amount."
 

 Id.
 

 Under subsection (j), either the "employee" or the "third party" may apply for a determination of the subrogation amount. Thus, whether Foremost could apply for a determination of the subrogation amount turns on whether it was a "third party" as that term is used in the statute.
 

 Subsection (a) of the same statute confirms that Foremost is, indeed, a "third party" with standing to make the motion. Subsection (a) describes who qualifies as a "third party":
 

 The right to compensation and other benefits under this Article for disability, disfigurement, or death shall not be
 
 *482
 
 affected by the fact that the injury or death was caused under circumstances creating a liability in some person other than the employer to pay damages therefor, such person hereinafter being referred to as the "third party."
 

 *849
 
 N.C. Gen.Stat. § 97-10.2(a) (2015). Foremost, as the underinsured motorist carrier liable for payment of damages for the injuries Defendant caused Plaintiff, meets that statutory definition.
 
 See
 

 Levasseur v. Lowery,
 

 139 N.C.App. 235
 
 , 238,
 
 533 S.E.2d 511
 
 , 513-14 (2000) (noting that "under N.C. Gen.Stat. § 97-10.2, payments made by the UIM carrier as well as the tort-feasor are from a 'third party' " (citation omitted));
 
 Creed v. R.G. Swaim and Son, Inc.,
 

 123 N.C.App. 124
 
 , 128-29,
 
 472 S.E.2d 213
 
 , 216 (1996) (same). This reading of N.C.G.S. §§ 97-10.2(a) and (j) is reinforced by N.C. Gen.Stat. § 20-279.21(b)(4), which provides that underinsured motorist insurers "shall have the right to appear in defense of the claim without being named as a party therein, and without being named as a party may participate in the suit as fully as if it were a party." N.C. Gen.Stat. § 20-279.21(b)(4) (2015).
 

 Appellants contend this reading of the statutory text is foreclosed by this Court's decision in
 
 Easter-Rozzelle v. City of Charlotte,
 
 ---N.C.App. ----,
 
 780 S.E.2d 244
 
 (2015). Specifically, Appellants point to the following excerpt from
 
 Easter-Rozzelle:
 

 Pursuant to subsection (j) of [ N.C. Gen.Stat. § 97-10.2 ], following the employee's settlement with the third party,
 
 either the employee or the employer may apply
 
 to a superior court judge to determine the subrogation amount. N.C. Gen.Stat. § 97-10.2(j) (2013). "After notice to the employer and the insurance carrier, after an opportunity to be heard by all interested parties, and with or without the consent of the employer, the judge shall determine, in his discretion, the amount, if any, of the employer's lien."
 

 Easter-Rozzelle,
 
 --- N.C.App. at ----,
 
 780 S.E.2d at 248
 
 (emphasis added). We agree that this quotation, standing alone, appears to provide that only an "employer" or an "employee"-but not a "third party"-may move to determine the subrogation amount. It is well settled that "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."
 
 In the Matter of Appeal from Civil Penalty,
 

 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989).
 

 *483
 
 However, it is equally well settled that "[l]anguage in an opinion not necessary to the decision is
 
 obiter dictum
 
 and later decisions are not bound thereby."
 
 Trustees of Rowan Tech. v. Hammond Assoc.,
 

 313 N.C. 230
 
 , 242,
 
 328 S.E.2d 274
 
 , 281 (1985) (citations omitted);
 
 see also
 

 Baker v. Smith,
 

 224 N.C.App. 423
 
 , 431 n. 5,
 
 737 S.E.2d 144
 
 , 149 n. 5 (2012).
 

 Our Supreme Court has stressed: "[I]t is a maxim not to be disregarded, that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit where the very point is presented for decision."
 

 MLC Auto., LLC v. Town of Southern Pines,
 

 207 N.C.App. 555
 
 , 564,
 
 702 S.E.2d 68
 
 , 75 (2010) (quoting
 
 State v. Jackson,
 

 353 N.C. 495
 
 , 500,
 
 546 S.E.2d 570
 
 , 573 (2001) ).
 

 An examination of
 
 Easter-Rozzelle
 
 reveals that the quote Appellant's urge us to follow is
 
 obiter dictum. Easter-Rozzelle
 
 involved the question of whether an employee, injured during the course and scope of his employment, could seek worker's compensation benefits after he had settled a personal injury claim with a third-party tortfeasor without the employer's or the Industrial Commission's knowledge or consent.
 
 Easter-Rozzelle,
 
 --- N.C.App. at ----,
 
 780 S.E.2d at 246-50
 
 . Which parties had standing to apply for a determination of the subrogation amount was not a question presented for adjudication in
 
 Easter-Rozzelle. See
 
 id.
 

 In the present case, by contrast, Plaintiff properly filed for workers' compensation benefits, and received the Industrial Commission's approval for disbursement of third party funds. And, unlike in
 
 Easter-Rozzelle,
 
 the standing issue is squarely presented for adjudication in the case now before us. Accordingly, we find the above-quoted passage from
 
 Easter-Rozzelle
 
 to be
 
 obiter dictum,
 
 by which we are not bound. We do not lightly disregard any statement in a prior published opinion of this Court. However, applying fundamental principles of statutory construction,
 
 *850
 
 discussed above, we hold that N.C.G.S. § 97-10.2(j) confers standing upon Foremost, as a "third party," to apply for a determination of the subrogation amount.
 

 (B)
 
 Subject Matter Jurisdiction
 

 Appellants argue that, notwithstanding Foremost's standing to move for a determination of the subrogation amount, the trial court lacked subject matter jurisdiction to rule on Foremost's motion. Appellants
 
 *484
 
 contend the amount of the workers' compensation lien is statutorily set and, thus, the trial court has extremely circumscribed ability to reduce the amount of the lien. Subject matter jurisdiction refers to a court's "power to pass on the merits of the case,"
 
 Boyles v. Boyles,
 

 308 N.C. 488
 
 , 491,
 
 302 S.E.2d 790
 
 , 793 (1983), and is "conferred upon the courts by either the North Carolina Constitution or by statute."
 
 Dare Cnty. v. N.C. Dep't of Ins.,
 

 207 N.C.App. 600
 
 , 610,
 
 701 S.E.2d 368
 
 , 375 (2010) (citation and quotation marks omitted). Whether a trial court has subject matter jurisdiction is a question of law, which is reviewed
 
 de novo
 
 on appeal.
 
 Phillips v. Orange County Health Dep't,
 

 237 N.C.App. 249
 
 , 253-54,
 
 765 S.E.2d 811
 
 , 815 (2014).
 

 In the present case, the relevant statute provides that if: (1) a judgment is obtained by the employee in an action against a third party; or (2) a settlement has been agreed upon by the employee and the third party,
 

 either party may apply to the resident superior court judge of the county in which the cause of action arose or where the injured employee resides, or to a presiding judge of either district,
 
 to determine the subrogation amount.
 
 After notice to the employer and the insurance carrier, after an opportunity to be heard by all interested parties, and with or without the consent of the employer,
 
 the judge shall determine, in his discretion, the amount, if any, of the employer's lien
 
 [.]
 

 N.C.G.S. § 97-10.2(j) (emphasis added). In the present case, a judgment was obtained by Plaintiff against Defendant, and Foremost applied-as it was entitled,
 
 see
 

 supra
 
 at 847-50-for a determination of the subrogation amount. Under the plain language of the statute, the authority of the trial court was triggered, allowing it to exercise discretion in determining the subrogation amount. Therefore, the trial court possessed subject matter jurisdiction pursuant to N.C.G.S. § 97-10.2(j) to determine the subrogation amount.
 

 Appellants ask us to draw a distinction between "determining" the amount of a subrogation lien-which, in their view, a trial court lacks subject matter jurisdiction over because the amount of the lien is statutorily set-and "reducing" or "eliminating" the lien-over which, according to Appellants, a trial court possesses subject matter jurisdiction, but only in a limited set of circumstances. We find no support for this argument in the text of N.C.G.S. § 97-10.2(j) or this Court's precedent.
 

 *485
 
 N.C.G.S. § 97-10.2(j) itself uses the word "determine," and states that, after a proper party has applied to a judge "to
 
 determine
 
 the subrogation amount," the judge "shall
 
 determine,
 
 in his discretion, the amount, if any, of the employer's lien." N.C.G.S. § 97-10.2(j) (emphases supplied). It is true, as Appellants note, that cases from this Court have used an assortment of verbs, sometimes in the same case, to describe the trial court's powers under N.C.G.S. § 97-10.2(j).
 
 See, e.g.,
 

 Alston v. Fed. Express Corp.,
 

 200 N.C.App. 420
 
 , 424-25,
 
 684 S.E.2d 705
 
 , 708 (2009) (stating the trial court has discretion under N.C.G.S. § 97-10.2(j) to " adjust" the amount of a workers' compensation lien");
 
 Childress v. Fluor Daniel, Inc.,
 

 172 N.C.App. 166
 
 , 168-69,
 
 615 S.E.2d 868
 
 , 869-70 (2005) (stating an employer's lien on third party recovery can be "reduced or eliminated" pursuant to N.C.G.S. § 97-10.2 );
 
 id.
 
 at 169,
 
 615 S.E.2d at 870
 
 (noting that N.C.G.S. § 97-10.2(j) explicitly gives the trial court jurisdiction to "set" the amount of the workers' compensation subrogation lien). However, cases from this Court and our Supreme Court have also used " determine," the statutory term.
 
 Johnson v. Southern Industrial Constructors,
 

 347 N.C. 530
 
 , 535,
 
 495 S.E.2d 356
 
 , 358 (1998) ;
 
 Hieb v. Lowery,
 

 344 N.C. 403
 
 , 409,
 
 474 S.E.2d 323
 
 , 326 (1996) ;
 
 Holden v. Boone,
 

 153 N.C.App. 254
 
 , 259,
 
 569 S.E.2d 711
 
 , 714 (2002) ;
 
 Levasseur,
 

 139 N.C.App. at 238
 
 ,
 
 533 S.E.2d at 513-14
 
 . Given use of the term "determine" by both appellate courts to
 
 *851
 
 describe the trial court's powers under N.C.G.S. § 97-10.2(j), and use of that term by the General Assembly in drafting N.C.G.S. § 97-10.2(j), we decline to draw an unyielding distinction between "reducing" or "eliminating" a workers' compensation subrogation lien, and "determining" the amount of such a lien. Pursuant to N.C.G.S. § 97-10.2(j), the trial court possessed subject matter jurisdiction to rule on Foremost's application to "determine" the subrogation amount.
 

 C.
 
 Interpretation of N.C.G.S. § 97-10.2
 

 Appellants argue the trial court erred in its interpretation of N.C.G.S. § 97-10.2. They contend the trial court miscalculated the statutory amount of a workers' compensation subrogation lien, and erred by concluding that a workers' compensation lien cannot exceed the amount of proceeds recovered against the third party tortfeasor. We review the trial court's statutory interpretation
 
 de novo.
 

 A & F Trademark, Inc. v. Tolson,
 

 167 N.C.App. 150
 
 , 153,
 
 605 S.E.2d 187
 
 , 190 (2004) (citations omitted). Statutory interpretation begins with the plain meaning of the words of the statute.
 
 Radzisz v. Harley Davidson of Metrolina,
 

 346 N.C. 84
 
 , 89,
 
 484 S.E.2d 566
 
 , 569 (1997) (citation omitted).
 

 The present case involves a situation in which the amount paid by the employee and its workers' compensation servicing agent is much
 
 *486
 
 greater than the amount of the third party recovery; while Neuwirth and Brentwood paid $528,665.61 in workers' compensation benefits, Plaintiff was awarded a substantially smaller sum, $285,000.00, in his third party suit against Defendant. Appellants argue that the amount of the lien may exceed the amount of proceeds recovered against a third party tortfeasor. We disagree.
 

 N.C.G.S. § 97-10.2 provides, as relevant to this argument:
 

 (f)(1) ... if an award final in nature in favor of the employee has been entered by the Industrial Commission, then
 
 any amount obtained by any person
 
 by settlement with, judgment against, or otherwise from the third party by reason of such injury or death shall be disbursed by order of the Industrial Commission for the following purposes and in the following order of priority:
 

 ...
 

 c. Third to the reimbursement of the employer for all benefits by way of compensation or medical compensation expense paid or to be paid by the employer under award of the Industrial Commission.
 

 ...
 

 (h) In any ... settlement with the third party, every party to the claim for compensation
 
 shall have a lien to the extent of his interest under (f) hereof upon any payment made
 
 by the third party by reason of such injury ... and such lien may be enforced against any person receiving such funds.
 

 N.C.G.S. §§ 97-10.2(f)(1), (h) (emphasis added). A reading of N.C.G.S. §§ 97-10.2(f)(1) and (h) confirms that the amount of a workers' compensation subrogation lien cannot exceed the amount of proceeds recovered from third party tortfeasors. N.C.G.S. § 97-10.2(h) gives an employer who has paid workers' compensation benefits a "lien to the extent of his interest
 
 under (f) hereof upon any payment made
 
 by the third party[.]" N.C.G.S. § 97-10.2(h) (emphasis added). N.C.G.S. § 97-10.2(f)(1), in turn, states that the only funds subject to the lien are the "amount obtained ... from the third party[.]" Intuitively, the Industrial Commission cannot disburse, and the employer cannot have a lien on, an amount larger than the amount actually recovered from the third party tortfeasor, in this
 
 *487
 
 case $285,000.00.
 
 See also
 

 Grant Constr. Co. v. McRae,
 

 146 N.C.App. 370
 
 , 374,
 
 553 S.E.2d 89
 
 , 91-92 (2001) ("If [an] employee is injured by a third party, the non-negligent employer must still pay workers' compensation benefits, but can claim a subrogation lien
 
 on any proceeds the employee wins in a subsequent lawsuit
 
 against the third party." (emphasis added) (citation omitted)); George L. Simpson, III,
 
 North Carolina Uninsured and Underinsured Motorist Insurance
 
 § 1:12 n.4 (2015-16 ed.) (noting that N.C.G.S. §§ 97-1 et seq. "gives the employer and its workers' compensation insurer a lien
 
 on payments made
 
 to the injured employee by any third-party
 
 *852
 
 tortfeasor, to the extent of the workers' compensation benefits paid to the employee." (emphasis added)). Accordingly, we hold that where the amount of workers' compensation benefits paid by the employer and their servicing agent to an employee is greater than all amounts obtained by the employee from a third party tortfeasor, the amount of the workers' compensation lien is equal to the amount of the judgment, and shall be disbursed pursuant to N.C.G.S. § 97-10.2.
 

 D.
 
 Abuse of Discretion
 

 Appellants next argue the trial court abused its discretion in determining the amount of the workers' compensation subrogation lien to be $190,000.00. N.C.G.S. § 97-10.2(j) "grants the trial court discretion to determine the amount of a workers' compensation lien and the trial court's decision is reviewed on appeal under an abuse of discretion standard."
 
 Kingston v. Lyon Constr., Inc.,
 

 207 N.C.App. 703
 
 , 711,
 
 701 S.E.2d 348
 
 , 354 (2010) (citation omitted). "In exercising its discretion, the trial court is to make a reasoned choice, a judicial value judgment, which is factually supported by findings of fact and conclusions of law sufficient to provide for meaningful appellate review."
 

 Id.
 

 (quotation marks, ellipses, and citation omitted).
 

 In its order determining the amount of Neuwirth's and Brentwood's workers' compensation subrogation lien, the trial court made fourteen findings of fact cogently identifying the parties and explaining the proceedings, both in this case and in the workers' compensation case between Plaintiff, Neuwirth, and Brentwood. The trial court then made eleven conclusions of law that demonstrate its thorough consideration of the necessary statutory factors. Beginning with the amount of the judgment-$285,000.00-the trial court correctly identified that court costs, attorney's fees, and interest are not subject to the workers' compensation subrogation lien.
 
 See
 
 N.C.G.S. § 97-10.2(f)(1) a.-b. (providing that a judgment against a third party tortfeasor "shall be disbursed" first to the "payment of actual court costs" and second to the payment of the "fee of the attorney representing the person making settlement or
 
 *488
 
 obtaining judgment");
 
 Bartell v. Sawyer,
 

 132 N.C.App. 484
 
 , 486,
 
 512 S.E.2d 93
 
 , 94 (1999) (holding that a workers' compensation lien holder is not entitled to "a pro-rata share of the pre-judgment interest [a] plaintiff received on his third party recovery").
 

 Nevertheless, Appellants argue that the trial court abused its discretion by determining the workers' compensation subrogation lien was $190,000.00, because doing so "effectively releas[ed] Foremost and GEICO from liability[.]" We do not agree. Foremost and GEICO contractually obligated themselves to provide Plaintiff with UIM coverage in satisfaction of the judgment obtained against Defendant. The arbitration panel decided Plaintiff was entitled to $285,000.00 in compensation for injuries he sustained-not $528,665.61. The trial court-in accordance with N.C.G.S. §§ 97-10.2(f)(1)-(2) and
 
 Bartell
 
 -then excluded court costs, attorney's fees, and interest from the amount of the judgment, and determined the amount of Neuwirth's and Brentwood's workers' compensation subrogation lien to be $190,000.00. The trial court did not abuse its discretion in doing so.
 

 E.
 
 Sufficiency of the Trial Court's Findings of Facts
 

 Finally, Appellants argue the trial court failed to make statutorily-required findings of fact in its 4 June 2015 order. Alleged violation of a statutory mandate presents a question of law, which we review
 
 de novo
 
 on appeal.
 
 See
 

 Brown v. Flowe,
 

 349 N.C. 520
 
 , 523,
 
 507 S.E.2d 894
 
 , 896 (1998). N.C.G.S. § 97-10.2(j) provides in relevant part:
 

 After notice to the employer and the insurance carrier, after an opportunity to be heard by all interested parties, and with or without the consent of the employer, the judge shall determine, in his discretion, the amount, if any, of the employer's lien, whether based on accrued or prospective workers' compensation benefits,
 
 and the amount of cost of the third-party litigation to be shared between the employee and employer.
 
 The judge shall consider the anticipated amount of prospective compensation the employer or workers' compensation
 
 *853
 
 carrier is likely to pay to the employee in the future, the net recovery to plaintiff, the likelihood of the plaintiff prevailing at trial or on appeal, the need for finality in the litigation, and any other factors the court deems just and reasonable, in determining the appropriate amount of the employer's lien.
 

 N.C.G.S. § 97-10.2(j) (emphasis added). Appellants contend that N.C.G.S. § 97-10.2(j) mandates a finding by the trial court regarding the "amount
 
 *489
 
 of costs of the third-party litigation to be shared between the employee and employer" (the "cost sharing consideration"), and that, in the present case, the trial court's order is incomplete for failing to make any findings of fact regarding the cost sharing consideration. While we agree with Appellants that, under our precedents, an order must contain a finding of fact regarding the cost of the third party litigation to be shared between the employee and employer, we conclude that the trial court's order in the present case adequately addressed this required consideration.
 

 Subsection (j) consists of four sentences; the second and third sentences (quoted above) are relevant to this argument. Whether N.C.G.S. § 97-10.2(j) requires findings of fact regarding the cost of third-party litigation to be shared between an employer and employee was squarely addressed by this Court in
 
 In re Estate of Bullock,
 

 188 N.C.App. 518
 
 ,
 
 655 S.E.2d 869
 
 (2008). In
 
 Bullock,
 
 this Court quoted the second and third sentences of subsection (j), and held that "it is clear from the use of the words 'shall' and 'and' in subsection (j), that the trial court must, at a minimum, consider the factors that are expressly listed in the statute. Otherwise, such words are rendered meaningless."
 
 188 N.C.App. at 526
 
 ,
 
 655 S.E.2d at 874
 
 . The Court then went on to describe "the cost of litigation to be shared between [employee] and [employer]" as a "mandated statutory factor[ ]," and faulted the trial court in that case for not making a finding nor giving "any indication" that the factor was "considered."
 

 Id.
 

 In accord with
 
 Bullock,
 
 a trial court determining the amount of a workers' compensation subrogation lien is required, at a minimum, to take into consideration the cost of the third party litigation to be shared between the employee and employer.
 
 [4]
 

 In the present case, we conclude that the trial court's order gives sufficient indication that the "mandatory statutory factor" regarding the cost of the third party litigation to be shared between the employee and employer was considered. The trial court's order notes that: (1) the arbitration panel found that Plaintiff was entitled to recover $285,000.00 against Defendant; (2) the court costs were $160.00; (3) Plaintiff's attorney's fees as of the date of the order totaled $83,333.33-$50,000.00 of which is attributed to work done as part of the workers' compensation case, and the other $33,333.33 originating from Nationwide's payment of
 
 *490
 
 $100,000.00 in the third-party litigation; (4) Plaintiff's attorney's fee agreement with Plaintiff "relative to the civil action is one third (1/3) of the amount paid on the judgment in this case, after litigation expenses and costs are paid;" and (5) the "workers ['] compensation carrier intend[ed] to allow [Plaintiff's attorney] to recover his agreed upon attorney fee and ... exclude[d] that attorney fee from the amount of the Employer/Workers['] Compensation carrier's subrogation lien."
 

 In its order, the trial court considered the amount Plaintiff and his attorney had received, and would receive in the future, as a result of the third party litigation; took into account the court costs that had been paid; and noted that Neuwirth and Brentwood intended to exclude Plaintiff's attorney's fees from the amount of the workers' compensation subrogation lien. Taken together, these findings of fact are sufficient to show that the trial court considered "the amount of cost of
 
 *854
 
 the third-party litigation to be shared between the employee and employer." N.C.G.S. § 97-10.2(j) ;
 
 see also
 

 Bullock,
 

 188 N.C.App. at 526
 
 ,
 
 655 S.E.2d at 874
 
 .
 

 III.
 
 Conclusion
 

 For the reasons stated, Foremost had standing to apply for a determination of the subrogation amount, and the trial court possessed subject matter jurisdiction to determine the amount. The trial court's 4 June 2015 order determining the amount of Neuwirth's and Brentwood's workers' compensation subrogation lien is affirmed.
 

 AFFIRMED.
 

 Judges HUNTER JR. and DILLON concur.
 

 [1]
 

 The Industrial Commission's order provided that Plaintiff's attorney was to receive a fee of $50,000.00, to be paid out of the total recovery.
 

 [2]
 

 UIM coverage "is deemed to apply to the first dollar of an underinsured motorist coverage claim beyond amounts paid to the claimant under the exhausted liability policy." N.C. Gen.Stat. § 20-279.21(b)(4) (2015). The limit of UIM coverage "applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted policy ... and the limit of [UIM coverage] applicable to the motor vehicle involved in the accident."
 

 Id.
 

 Accordingly, Nationwide paid $30,000.00 under the "exhausted policy," and $70,000.00 in UIM coverage, for a total of $100,000.00.
 

 [3]
 

 While Appellants did not challenge Foremost's standing in the trial court, "subject matter jurisdiction exists only if a plaintiff has standing and subject matter jurisdiction can be raised at any time in the court proceedings, including on appeal."
 
 Village Creek Prop. Owners' Ass'n, Inc. v. Town of Edenton,
 

 135 N.C.App. 482
 
 , 485 n. 2,
 
 520 S.E.2d 793
 
 , 795 n. 2 (1999) (citation omitted).
 

 [4]
 

 In its brief, GEICO contends a plain reading of N.C.G.S. § 97-10.2(j) shows there is no such requirement, and urges this Court to disregard cases which hold to the contrary. Of course, "[w]e have no authority to overrule this Court's prior decision" in
 
 Bullock.
 

 Wells v. Cumberland Cty. Hosp. Sys., Inc.,
 

 181 N.C.App. 590
 
 , 593,
 
 640 S.E.2d 400
 
 , 403 (2007) ;
 
 see also
 

 In the Matter of Appeal from Civil Penalty,
 

 324 N.C. at 384
 
 ,
 
 379 S.E.2d at 37
 
 . We therefore decline GEICO's invitation to do so.